[Cite as *Woehler v. Brandenburg*, 2012-Ohio-5355.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| MARK J. WOEHLER, | : | CASE NO. CA2011-12-082 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N |
| | : | 11/19/2012 |
| - vs - | : | |
| CRISTI L. BRANDENBURG, | : | |
| Defendant-Appellee. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2010-CVH-1560


Michael J. Chapman, One West Fourth Street, Cincinnati, Ohio 45202, for plaintiff-appellant

Donald W. White, 237 Main Street, Batavia, Ohio 45103, for defendant-appellee


**S. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, Mark J. Woehler, appeals the judgment of the Clermont County Common Pleas Court denying his request for certain damages in his breach-of-contract action against defendant-appellant, Cristi L. Brandenburg. We affirm the trial court's judgment.

{¶ 2} Mark and Cristi were divorced in 2004. Following the divorce, Cristi and the parties' three minor children lived at the property located on Miami Woods Drive in Loveland,

Ohio. The property was titled solely in Cristi's name.

{¶ 3} In June 2007, Mark and Cristi executed an agreement in which Cristi agreed to add Mark to the title of the property for the purpose of using his credit, assets and income to assist her in obtaining a mortgage loan on the property. She also agreed to make all mortgage, tax and insurance payments on the property during the time she has sole possession of it and to notify Mark prior to any items due and payable on the property becoming more than 30 days delinquent. She further agreed to convey all her interest in the property to Mark should any payment on the property become more than 90 days delinquent.

{¶ 4} Mark, in turn, agreed to allow his name to be added to the title of the property and to sign any documents required to assist Cristi in obtaining a mortgage loan on the property. He also agreed that he would not be entitled to possession of the property unless Cristi is more than 90 days delinquent in any payment on it *and* he makes such payment, in which case, he would be required to refinance the property within 60 days and have Cristi's name removed from any obligation associated with the property. He further agreed to convey all his interest in the property to Cristi upon her satisfying any obligation that could accrue to him.

{¶ 5} Each of the parties also agreed to sign a quitclaim deed conveying all his or her interest in the property to the other, with each party's quitclaim deed to be held in escrow by the opposing party's attorney during the period that Mark was liable for any debt on the property. The agreement also contained a provision that stated, "[b]oth parties acknowledge that the intent of this agreement is solely for Mark J. Woehler to assist Cristi L. Brandenburg to obtain a mortgage loan on the property."

{¶ 6} In October 2007, Cristi filed a motion in domestic relations court seeking to increase Mark's child support obligation. To resolve this issue and others, the parties entered into a second agreement in January 2008, in which they agreed that Mark would

make the $1,800 monthly mortgage payment on one of the two mortgages existing on the property, taking the tax deductions for the mortgage interest and the real estate taxes, and in return, Cristi would withdraw her motion to modify child support. The second agreement provided that Mark's obligation to make the monthly mortgage payment would terminate if Cristi were to file another motion to modify Mark's child support obligation. Eight months later, in September 2008, Cristi did, in fact, file another motion to modify Mark's child support obligation.

{¶ 7} In February 2010, Cristi recorded the quitclaim deed executed by Mark as part of the parties' 2007 agreement, which deed was to be held in escrow by Cristi's attorney. Cristi would later state in an affidavit that she recorded Mark's quitclaim deed on the advice of counsel who told her that the parties' 2008 agreement terminated their 2007 agreement. In March 2010, Cristi made her last mortgage payment on the property.

{¶ 8} In July 2010, Mark filed a complaint against Cristi alleging that she was in default on her mortgage loan payments on the property for more than 90 days and that, therefore, he was entitled to specific performance of the provision in the parties' agreement giving him possession of the property 90 days after Cristi defaulted on the mortgage loan and monetary damages. After Cristi answered the complaint, Mark moved for summary judgment.

{¶ 9} In April 2011, the trial court granted partial summary judgment to Mark, finding that the parties' 2008 agreement modified rather than terminated their 2007 agreement and that Mark's obligations under the 2008 agreement ended when Cristi filed another motion to modify child support. The trial court also found that once Mark's obligations under the 2008 agreement ended, Cristi's obligations under the parties' 2007 agreement resumed, at which point it again became Cristi's obligation to make all mortgage, tax and insurance payments on the property.

{¶ 10} The trial court then found that Cristi breached the parties' 2007 agreement by failing to make a mortgage loan payment on the property for more than 90 days, by failing to notify Mark prior to any item due and payable on the property becoming more than 30 days delinquent, and by recording the quitclaim deed from Mark during the period of time he was liable for any debt on the property. As a result, the trial court determined that Mark was entitled to specific performance of the provision in the parties' 2007 agreement requiring Cristi to convey to him by quitclaim deed all of her right, title and interest in the property.

{¶ 11} In October 2011, a trial was held on the question of damages. At the outset of the trial, Mark informed the trial court that he was no longer seeking specific performance of the parties' 2007 agreement and, instead, was seeking only monetary damages for Cristi's breach of that agreement. At trial, Mark testified that when he attempted to refinance his mortgage loan on his personal residence at Evolve Bank and Trust, he was not able to obtain an interest rate more favorable than the 4.875 percent rate that he currently has. He also presented the testimony of David Scully, the branch manager and senior mortgage loan officer for Evolve Bank and Trust, who testified that without Cristi's default on the mortgage and the resulting foreclosure action brought against her and Mark by Cristi's mortgage loan company, Mark could have obtained an interest rate of 3.75 percent for a 15-year loan.

{¶ 12} At the close of evidence, Mark requested (1) $56,219.18 in "expectancy" damages for not being given possession of the property on the date of Cristi's breach, (2) $14,549.32 in "consequential" damages for his "lost opportunity" to refinance his mortgage loan on his personal residence at a lower rate due to his damaged credit rating, (3) $5,000 in "nominal" damages for costs he will incur in the future due to his damaged credit rating, and (4) $2,909.40 for the attorney fees he incurred in defending himself in the foreclosure action brought against him and Cristi by her mortgage loan company following her default on her mortgage payments on the property.

{¶ 13} In November 2011, the trial court issued a decision awarding Mark $2,909.40 in attorney fees but denying his request for expectancy, consequential and nominal damages.

{¶ 14} Mark now appeals, assigning the following as error:

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY NOT FOLLOWING OHIO LAW WHEN IT DENIED MR. WOEHLER HIS EXPECTANCY REMEDY A/K/A THE BENEFIT OF THE BARGAIN.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN ITS APPLICATION OF THE "REASONABLE CERTAINTY" RULE TO DENY CONSEQUENTIAL DAMAGES FOR MR. WOEHLER'S DAMAGED CREDIT AND THE LOSS SUSTAINED FROM A REJECTED LOAN APPLICATION[.]

{¶ 19} In his first assignment of error, Mark argues the trial court erred in rejecting his claim that he was entitled to $56,219.18 in "expectancy" or "expectation-interest" damages as a result of Cristi's breach of the parties' 2007 agreement.

{¶ 20} In denying Mark's request for $56,219.18 in expectation-interest damages, the trial court noted that the parties' 2007 agreement required nothing more of Mark than to lend Cristi his name and credit rating to help her obtain a mortgage loan on the property and did not require him to expend any of his personal funds either upon his co-signing for the mortgage loan on the property or at any time during the life of the agreement so long as Cristi remained current in her mortgage loan payments. The trial court also noted that as long as Cristi remained current in her payments, the agreement gave Mark no possessory interest in the property that would have allowed him to physically reside there or to share in any incidental benefits of ownership, such as income tax deductions and the like. The trial court further noted that Mark was given the opportunity to protect his interest in the property by the

following term in the parties' agreement:

> Mark J. Woehler agrees that he is not entitled to possession of the property unless Cristi L. Brandenburg is more than 90 days delinquent in any payment on the property *and* Mark J. Woehler makes such payment. In such case, Mark J. Woehler must refinance the property within 60 days and have Cristi L. Brandenburg's name removed from any obligations associated with the property.

(Emphasis added.)

{¶ 21} The trial court found that Mark was entitled to specific performance of this provision in the parties' agreement as a result of Cristi's breach but that Mark had chosen not to pursue it. The trial court also found that Mark had received a favorable judgment in the foreclosure action brought against him and Cristi by her mortgage loan company and that as a result, he was no longer obligated to make any payments on the original mortgage loan he cosigned with Cristi in 2007. The trial court then found that the remaining questions to be answered were (1) what is Mark's position, post-breach, and (2) what monetary damages is he entitled to receive to restore him to his pre-breach position?

{¶ 22} The trial court answered these questions by finding that Mark's pre-breach position did not require him to pay any funds to help Cristi obtain her original mortgage loan on the property. The trial court noted that as a result of the parties' 2007 agreement, Mark had received an equal ownership interest in the property and that he became contractually obligated to pay the mortgage payment on the property as a co-guarantor. As to his post-breach position, the trial court found that Mark still had not expended any funds to pay any delinquencies on the property and that while he lost his ownership interest in the property as a result of the foreclosure, he also abandoned his remedy to specific performance under the 2007 agreement. After concluding that Mark "has, in reality, improved his position, post-breach, as he is no longer exposed to any future payments he was equally obligated to pay as a co-guarantor of the original note and mortgage[,]" the trial court denied Mark's request

- 6 -

for expectation-interest damages of $56,219.18.

{¶ 23} Mark argues the trial court erred in not awarding him $56,219.18 in expectation-interest damages for not being able to obtain possession of the property on June 1, 2010, the date on which Cristi breached the parties' 2007 agreement. The $56,219.18 amount represents the difference between (1) the fair market value of the property on the date of the breach, which, according to Mark's real estate appraiser, Audrey Boyd, was $300,000, and (2) the property's "purchase" or "contract" price on that same date, which, according to Mark, was $243,780.82, which amount represents the principal balance on the property's note and mortgage on that same date. Mark also argues the trial court erred in considering what monetary damages he was entitled to receive to restore him to his pre-breach position and, instead, should have considered what monetary damages he was entitled to receive to restore him to the position in which he would have been had Cristi not breached the parties' agreement. We disagree with both of these arguments.

{¶ 24} A party injured by a breach of contract is entitled to its "expectation interest," which is the injured party's interest in being put in the same position in which it would have been had the contract been performed. *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.*, 140 Ohio App.3d 665, 669 (8th Dist.2000); *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, ¶ 26. The purpose behind granting an aggrieved party its expectation interest is to give the party the "benefit of its bargain." *Livi Steel, Inc. v. Bank One, Youngstown, N.A.*, 65 Ohio App.3d 581, 589 (11th Dist.1989). "[A] party's expectation interest represents the *actual* worth of the contract to him[,]" and "[t]herefore, his recovery is limited to the loss he has actually suffered by reason of the breach[.]" (Emphasis sic.) *Brads v. First Baptist Church of Germantown, Ohio*, 89 Ohio App.3d 328, 339 (2d Dist.1993). "Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Textron Fin. Corp.*

*v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144 (9th Dist.1996).

{¶ 25} Mark's argument that his expectation-interest damages should be the difference between the property's fair market value on the date of the breach and the property's purchase or contract price at the time the property should have been conveyed to him following Cristi's breach apparently stems from his belief that the agreement should be viewed, primarily, as a contract to convey real property. However, while there were provisions in the agreement related to the potential conveyance of the property, the main thrust of the agreement was to allow Cristi to obtain a mortgage loan on the property where she lived with the parties' children following the parties' divorce. The agreement provided that if Cristi breached the agreement, then ownership and possession of the property would be transferred to Mark. The trial court granted that remedy to Mark who declined to accept it and who requested damages based on the property's fair market value, instead. However, granting Mark's request for $56,219.18 in damages would award him an amount of damages that the parties clearly did not contemplate in the event Cristi breached the agreement.

{¶ 26} As to Mark's argument that the trial court erred in considering what monetary damages he was entitled to receive in order to restore him to his pre-breach position rather than what monetary damages he was entitled to receive to restore him to the position in which he would have been had Cristi not breached the parties' 2007 agreement, we find that this argument ignores both the purpose and tenor of the agreement. The parties' purpose in entering into the agreement was to allow Cristi to maintain ownership and possession of the property in which she and the parties' children live. In keeping with that purpose, the terms of the parties' 2007 agreement were drawn heavily in Cristi's favor.

{¶ 27} For instance, the parties' agreement contained a provision in which Mark agreed "to convey all of his interest in the property to Cristi * * * upon satisfaction of all obligations that could accrue to Mark * * * being satisfied by Cristi[.]" Mark also agreed that

he would not be entitled to possession unless Cristi was more than 90 days delinquent in her payments *and* Mark made the payment, and that in such an instance, Mark was required to refinance the property within 60 days *and* have Cristi's name removed from any obligations associated with the property. The agreement also provided strict requirements in order for Mark to obtain possession of the property in the event of Cristi's default. The existence of these provisions in the parties' 2007 agreement demonstrate that the damages Mark seeks as a result of Cristi's breach were not in the parties' contemplation when they entered into the agreement. Instead, the parties contemplated that in the event Cristi breached the agreement, then ownership and possession of the property would be transferred to Mark.

{¶ 28} Mark also argues the trial court erred in suggesting that he could have obtained his requested expectation-interest damages if he had elected to pursue the specific-performance remedy granted to him under the parties' agreement by using this remedy to acquire sole legal title and possession of the property. Citing the testimony of his mortgage loan expert, Scully, Mark asserts that once the foreclosure action was filed against him and Cristi, he would not have been able to obtain refinance lending for three to four years. However, as Cristi points out, the evidence shows that Mark has an annual salary of more than $180,000 and very little debt. Thus, it is clear that had he chosen to have done so, Mark could have made the late payments on the mortgage loan and refinanced the property, which, in turn, would have allowed him to effectively receive the expectation-interest damages he sought in this action. Furthermore, the record shows that Mark sustained no actual, out-of-pocket expenses as a result of Cristi's breach other than his attorney fees for defending the foreclosure action, which the trial court ordered Cristi to pay.

{¶ 29} In light of the foregoing, the trial court did not err in refusing to award Mark $56,219.18 for his alleged, expectation-interest damages.

{¶ 30} Therefore, Mark's first assignment of error is overruled.

{¶ 31} In his second assignment of error, Mark argues the trial court erred in refusing to award him consequential damages of $14,550 for his "lost opportunity" to refinance his home at a lower interest rate, which, he alleges, was caused by the harm done to his credit rating as a result of Cristi's default on her mortgage loan on the property.

{¶ 32} In rejecting Mark's request for $14,550 in consequential/lost-opportunity damages, the trial court found his "credibility regarding his good faith efforts to refinance his own mortgage loan lacking." The trial court noted that Mark failed to present any competent, credible testimony to explain his current credit rating on the credit report submitted. The trial court further noted that while Mark's mortgage loan expert, Scully, testified that he had obtained Mark's credit report, Scully was not in a position to competently testify how each of the reporting agencies to which the credit report refers, Experian, Equifax and Transunion FICO Classic, arrived at their listed credit ratings.

{¶ 33} The trial court also noted that Scully "did not testify that no lending institution would give [Mark] a lower interest rate on his current mortgage, based upon the credit report he reviewed[,]" and that the "claimed additional costs [Mark] may pay on his own mortgage loan versus his proposed reduced rate loan, were lacking in details as to the full terms of the proposed new loan." Therefore, the trial court concluded that the amount of Mark's alleged, additional cost was "based, in large part, upon mere speculation[,]" and thus was "not established with reasonable certainty[.]"

{¶ 34} Mark argues the trial court erred by denying his request for consequential/lost-opportunity damages on the grounds that his claimed damages were speculative and not established with reasonable certainty. He contends that the trial court's finding that he failed to establish his damages with reasonable certainty was based on its improper determination that he had failed to prove the *amount* of his damages with reasonable certainty and that the trial court, instead, should have simply considered whether he proved the *existence* of his

damages with reasonable certainty. We find this argument unpersuasive.

{¶ 35} Generally, damages in civil actions like breach of contract cases must be proven with "reasonable certainty." *Textron Fin. Corp.*, 115 Ohio App.3d at 144. However, damages are not uncertain merely because they cannot be calculated with absolute exactness; it is sufficient if the evidence affords a reasonable basis for computing damages, even if the result is only an approximation. *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 32 (8th Dist.). "Reasonable certainty" in breach-of-contract cases requires a greater degree of proof than in a tort action. *Textron Fin. Corp.* at 144. However, it is uncertainty as to the *existence* of damages rather than uncertainty as to their *amount* which precludes recovery. *Accurate Die Casting Co. v. Cleveland*, 2 Ohio App.3d 386, 391 (8th Dist.1981).

{¶ 36} A careful review of the trial court's findings on Mark's request for consequential/lost-opportunity damages shows that the trial court denied his request for such damages based on the trial court's uncertainty of their existence rather than their amount. The evidence in the record supports the trial court's findings that (1) Mark failed to show that he made a good faith effort to find a lending institution that would have given him a more reasonable rate to refinance his mortgage on his personal residence, and (2) the foreclosure case filed against Mark and Cristi by her mortgage loan company had ended favorably for Mark, leaving him with no debt as a result of Cristi's default other than his attorney fees, which Cristi was ordered to repay. Consequently, the trial court did not err in rejecting Mark's request for consequential/lost-opportunity damages.

{¶ 37} Mark asserts that the trial court erred in finding it significant that his expert, Scully, did not testify that no lending institution would give him a lower interest rate on his current mortgage based upon the credit report he reviewed. Mark argues that requiring him to show that *no* bank would have given him a lower rate imposed an extraordinary and

unreasonable mitigation requirement on him. However, we do not read the trial court's finding to have imposed such a requirement; instead, we interpret it as merely providing support for the trial court's rejection of Mark's claim that he suffered actual damages to his credit rating as a result of Cristi's breach of the parties' 2007 agreement.

{¶ 38} Mark also argues the trial court erred in refusing to grant him even "nominal" damages as a result of the damage to his credit rating. This argument lacks merit.

{¶ 39} As stated in *The Toledo Group, Inc. v. Benton Industries, Inc.*, 87 Ohio App.3d 798, 807 (6th Dist.1993):

> In a case where the "legal right * * * to be vindicated * * * has produced no actual loss of any kind, or where, from the nature of the case, some injury has been done, the extent of which the evidence fails to show," the complaining party may recover nominal damages. *Lacey v. Laird* (1956), 166 Ohio St. 12, * * * paragraph two of the syllabus. "Nominal damages" are some small amount of money, such as $1. *Lacey, supra* at 21 * * *. Even awards in the $100 to $200 range are considered too substantial to qualify as "nominal" damages. *Id.*

{¶ 40} Since awards of even $100 or $200 have been found to be too substantial to qualify as "nominal" damages, an award of $5,000 is clearly too much to qualify as "nominal" damages. *Id.* Moreover, there was insufficient evidence to show that it is reasonably certain that Mark will ever suffer the future damages for which he seeks the $5,000 in "nominal" damages. Consequently, the trial court did not err in rejecting Mark's request for $5,000 in nominal damages.

{¶ 41} Accordingly, Mark's second assignment of error is overruled.

{¶ 42} Judgment affirmed.


PIPER and BRESSLER, JJ., concur.


Bressler, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.