[Cite as *Robinson v. Turoczy Bonding Co.*, 2016-Ohio-7397.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 103787

---

# L. BRANDON ROBINSON

PLAINTIFF-APPELLEE

vs.

# TUROCZY BONDING COMPANY, ET AL.

DEFENDANTS-APPELLANTS

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-811184

**BEFORE:** Boyle, J., Stewart, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 20, 2016

**ATTORNEY FOR APPELLANT**

Brett M. Mancino
Mancino Co., L.P.A.
75 Public Square, Suite 1016
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Joseph F. Scott
Ryan A. Winters
Scott & Winters Law Firm, L.L.C.
The Superior Building
815 Superior Avenue E., Suite 1325
Cleveland, Ohio   44114

Kevin V. Rogers, Jr.
Kraig & Kraig
815 Superior Avenue East, Suite 1920
Cleveland, Ohio   44114

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Turoczy Bonding Company ("Turoczy Bonding"), filed this appeal after judgment was entered in favor of plaintiff-appellee, L. Brandon Robinson ("Robinson"), following a jury trial. Turoczy Bonding appeals from the jury verdict, the trial court's decisions denying its motions for directed verdict, judgment notwithstanding the verdict and new trial, as well as the trial court's order awarding prejudgment interest. Finding no merit to the appeal, we affirm.

A. **Procedural History and Factual Background**

{¶2} Robinson worked for Turoczy Bonding (a.k.a. City Bonding) as an authorized bail bond agent from October 2009 through December 2011. Turoczy Bonding is a local company that posts surety bonds (up to one million dollars) entirely backed by Universal Insurance. Robinson became a bail bond agent after taking a course taught by Elizabeth Reyes Large ("Elizabeth"), who worked with Garrett McClellan, the manager of Turoczy Bonding.

{¶3} In July 2013, Robinson filed a lawsuit against Turoczy Bonding, Spring Break, L.L.C., as well as Elizabeth and Donnell Mitchell ("Donnell") — both bail bond agents of Turoczy Bonding, asserting claims for breach of contract, fraudulent inducement, conversion, and unjust enrichment. The matter proceeded to a jury trial, where the breach of contract claim against Turoczy Bonding was the only claim to survive defendants' motion for a directed verdict following the close of Robinson's case.

{¶4}   According to Robinson's case at trial, Turoczy Bonding had failed to pay Robinson the commission that he was promised for bond premiums that he collected.   In the bail bond industry, a bail bond company is required to charge the statutory rate of 10 percent on the face value of a bond — which is the premium for the bond.   Robinson established that Turoczy Bonding had agreed to pay him under the following commission structure: 40 percent commission on the premium for all bonds with a face value greater than $5,000, and 30 percent commission on all bonds with a face value of less than $5,000.   For example, if Robinson wrote a bond for $10,000, he would be entitled to $400 of the $1,000 premium.   According to Robinson's case at trial, he was owed $103,444 in unpaid commissions.   Robinson offered his receipt book and a detailed spreadsheet as evidence of every bond that he wrote and the commissions that had not been paid.   Specifically, Robinson's spreadsheet, which was admitted as an exhibit and not challenged on appeal, reflected that he handled 395 bonds, which produced a total of $361,060 in premiums.

{¶5}   Conversely, Turoczy Bonding maintained that it never employed Robinson, that he was solely an "independent-contracted agent," and that Robinson "possessed" many of the commissions that he now claims he is owed but then turned these commissions over to Elizabeth or Donnell — not Turoczy Bonding.   According to Turoczy Bonding's records, Robinson was paid in full on all the commissions that he was due.   Specifically, Turoczy Bonding offered a detailed spreadsheet, summarizing the weekly bail agent reports submitted by Robinson.   McClellan testified that bail bond

agents were paid based on the agent's submission of weekly reports, and Turoczy Bonding's records demonstrated that Robinson was paid $13,812.10 on the $38,596.10 in premiums collected on bonds that he wrote.

{¶6} We will discuss the evidence presented at trial in greater detail as it relates to our disposition of the assignments of error.

{¶7} The jury ultimately returned a verdict in Robinson's favor in the amount of $75,000. The trial court entered judgment on this amount and awarded Robinson prejudgment interest. Turoczy Bonding subsequently filed motions for judgment notwithstanding the verdict and new trial, both of which the trial court denied.

{¶8} Turoczy Bonding appeals, raising the following five assignments of error:

> I. The jury verdict against Turoczy was against the manifest weight of the evidence.
>
> II. The trial court erred in not granting a directed verdict in favor of Turoczy, or in the alternative, a new trial in light of the fact that Donnell was a named necessary party but never served with the complaint and he did not participate in the trial.
>
> III. The trial court erred in instructing the jury on the breach of commission claim.
>
> IV. The trial court erred in not dismissing the case because Robinson could not testify with any degree of reasonable certainty as to his claimed damages.
>
> V. The trial court erred when it granted prejudgment interest without a motion being filed and without a hearing.

**B. Manifest Weight of the Evidence**

**{¶9}** In his first assignment of error, Turoczy Bonding argues that the jury's verdict is against the manifest weight of the evidence. We disagree.

**{¶10}** When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶11}** "We are guided by a presumption that the findings of the trier of fact are correct." *Di v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 101760, 2016-Ohio-686, ¶ 115, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

**{¶12}** At the heart of Turoczy Bonding's manifest weight of the evidence challenge is its claim that Robinson had collected but turned over to Elizabeth or Donnell many of the commissions that he later sought Turoczy Bonding to pay. Specifically,

Turoczy Bonding relies on Robinson's testimony admitting that he would collect payment from a client and then turn the payment over to Donnell or Elizabeth at the end of the day. Turoczy Bonding argues that Robinson failed to present any evidence that Donnell or Elizabeth had any authority to accept payments on Turoczy Bonding's behalf or that Turoczy Bonding actually received the payments.

{¶13} But our review of the record reveals otherwise. The evidence at trial supported Robinson's case that Donnell or Elizabeth had apparent authority to accept payments on behalf of Turoczy Bonding. The evidence revealed that Elizabeth brought Robinson on board at Turoczy Bonding, introduced him to McClellan and Donnell, and that Donnell took him under his wing. Robinson further testified that he initially believed Elizabeth to be his boss. And while Elizabeth was an independent bail bond agent of Turoczy Bonding during part of Robinson's tenure with Turoczy Bonding, she also worked as one of the office employees in 2010. According to McClellan's testimony, Elizabeth had authority to accept cash payments on financed bonds and deliver the commission owed to the respective bail bond agent while working as an office employee. Elizabeth also testified that she "may have" collected money from Turoczy Bonding to be paid to Robinson, specifically referencing if Robinson had a client coming into the office.

{¶14} The other compelling evidence that supports the jury's reasonable inference that Donnell or Elizabeth had apparent authority to accept payments on behalf of Turoczy Bonding is the fact that some of the weekly reports submitted on Robinson's behalf were

completed by either Donnell or Elizabeth. Notably, Turoczy Bonding's defense at trial was that it paid Robinson what it owed him based on the weekly reports filed. According to McClellan, the weekly report was the sole method for determining the commissions owed a bail bond agent. Given that Turoczy Bonding was obviously paying Robinson for commissions based on reports filled out by Donnell or Elizabeth, we find that the jury reasonably believed that Turoczy Bonding was on notice of Donnell and Elizabeth accepting payments. McClellan further acknowledged that it was his responsibility and job duty as officer manager to make sure that commissions were properly delivered to the bail bond agent who earned them. While McClellan denied that Robinson ever complained about not being paid his commission, Robinson testified to the contrary.

{¶15} Notably, Turoczy Bonding is not challenging Robinson's evidence related to the number of bonds that he handled on Turoczy Bonding's behalf. At trial, Robinson established that Turoczy Bonding is required to track all of the power of attorneys issued to its bail bondsmen and that they are required to keep on file for five years all applications filed in support of a bond. Robinson further demonstrated that, despite Turoczy Bonding's ability to refute the receipt records offered by Robinson in support of his claim of unpaid commissions, Turoczy Bonding did not present any of the bond applications. McClellan acknowledged producing documents reflecting Robinson having issued only 45 powers of attorney to Robinson, despite Robinson's receipts

reflecting 395 powers of attorney. McClellan conceded, therefore, that Turoczy Bonding had some "missing records."

{¶16} Although conflicting evidence was presented at trial, we cannot say that the jury clearly lost its way. The jury clearly found Robinson to be more credible, which it was free to do. Based on the evidence in the record, we find that the verdict is not against the manifest weight of the evidence.

{¶17} The first assignment of error is overruled.

## C. Motion for Directed Verdict, Judgment Notwithstanding the Verdict, or New Trial

{¶18} In its second assignment of error, Turoczy Bonding argues that the trial court erred in denying its request for directed verdict, judgment notwithstanding the verdict, or new trial on the basis that Donnell was never made a party to the action. According to Turoczy Bonding, Donnell's absence from the trial as well as the trial court's granting directed verdict in favor of Elizabeth were procedural irregularities that prejudiced its defense. Turoczy Bonding further argues that the trial court "exacerbated the issue when it erroneously and prejudicially instructed the jury" as follows during Turoczy Bonding's cross-examination of Robinson:

> THE COURT: Ladies and gentlemen, I would explain to you that when the lawsuit was originally filed, there was a claim asserted against this additional person, Donnell Mitchell; however, that person has not been formally brought into the lawsuit, therefore, no one is being now — there is no claim before you against this person because that person has never been formally brought into the lawsuit. Thank you.

{¶19} We find this argument to lack merit.

**{¶20}** Civ.R. 50 sets forth the standard of granting a motion for directed verdict:

When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to each party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

**{¶21}** The same standard applies to a motion for judgment notwithstanding the verdict. *Chem. Bank of N.Y. v. Neman*, 52 Ohio St.3d 204, 207, 556 N.E.2d 490 (1990). We employ a de novo standard of review in evaluating the grant or denial of a motion for a directed verdict or a motion for judgment notwithstanding the verdict. *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399 (1987). "The trial court does not weigh or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law." *Siebert v. Lalich*, 8th Dist. Cuyahoga No. 87272, 2006-Ohio-6274, ¶ 14 (citing a string of cases).

**{¶22}** Although it broadly attacks the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict, Turoczy Bonding raises no argument related to the evidence presented at trial. Instead, the gravamen of its argument is that it "was prejudiced because Donnell (and Elizabeth) were necessary and indispensable parties who should have participated at the trial." This argument therefore relates solely to Turoczy Bonding's motion for a new trial under Civ.R. 59(A).

**{¶23}** The standard of review we apply to a trial court's ruling on a motion for new trial filed under Civ.R. 59 depends on the grounds for the motion. For example, a motion for new trial premised upon a procedural irregularity under Civ.R. 59(A)(1) is

reviewed for an abuse of discretion. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 35 – 36. A motion for a new trial premised upon "error of law occurring at the trial and brought to the attention of the trial court" under Civ.R. 59(A)(9), however, is reviewed under a de novo standard.

{¶24} Applying either standard to Turoczy Bonding's motion for a new trial, we find no basis to reverse the trial court's judgment. Contrary to Turoczy Bonding's claim on appeal, we find no instance in the record where Turoczy Bonding raised this issue and asked that Donnell be made a party to the trial. In fact, despite that Turoczy Bonding's defense strategy relied heavily on pointing the finger at Donnell as the culpable party, Turoczy Bonding never moved the court to have Donnell joined as a necessary party. Civ.R. 19(A) expressly provides that if a party fails to timely assert the defense of failure to join a party, the defense is waived. *Bamba v. Derkson*, 12th Dist. Warren No. CA2006-10-125, 2007-Ohio-5192, ¶ 22, citing *Garcia v. O'Rourke*, 4th Dist. Gallia No. 04CA7, 2005-Ohio-1034, ¶ 18; *see also Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 8th Dist. Cuyahoga No. 102121, 2015-Ohio-1846, ¶ 18 (other than in a declaratory judgment action, "the failure to properly raise and maintain a joinder defense waives that defense"). In the instant case, Turoczy Bonding never raised this issue in the trial court proceedings below and therefore has waived it.

{¶25} Likewise, Turoczy Bonding's failure to raise the issue before or even during trial is fatal to the grounds asserted in its motion for a new trial. Indeed, "[a] movant may not obtain relief pursuant to Civ.R. 59(A)(1) for an irregularity in the proceedings

when the movant could reasonably have avoided the prejudice the irregularity caused." *See Allin v. Hartzell Propeller, Inc.*, 161 Ohio App.3d 358, 2005-Ohio-2751, 830 N.E.2d 413, ¶ 14 (2d Dist.) (plaintiff's failure to seek continuance in order to properly serve witness waived his right to complain that irregularity chargeable to court prevented him from having a fair trial). Similarly, Civ.R. 59(A)(9) allows for a new trial based on an "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application." Again, Turoczy Bonding never brought this alleged error to the trial court's attention during the trial. Nor did it object to the trial court's instruction during Turoczy Bonding's cross-examination of Robinson, which it now argues deprived it of a fair trial. Aside from finding no error in the trial court's explanation to the jury that Donnell "has not been formally brought into the lawsuit," Turoczy Bonding has waived this issue on appeal by not objecting. *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 32, 734 N.E.2d 782 (2000) (the failure to object at the trial court level constitutes a waiver of the issue on appeal).

{¶26} Having found that the trial court neither abused its discretion nor erred, we overrule the second assignment of error.

### D. Jury Instruction

{¶27} In its third assignment of error, Turoczy Bonding argues that the trial court erred in instructing the jury on the breach of commission claim because "it attributed liability to Turoczy through 'an authorized employee' (presumably Donnell and

Elizabeth) when there was no evidence that Donnell and Elizabeth were 'authorized employees' with authority to act on behalf of Turoczy."

**{¶28}** The decision to give a specific jury instruction rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Sicklesmith v. Chester Hoist*, 169 Ohio App.3d 470, 2006-Ohio-6137, 863 N.E.2d 677, ¶ 62 (7th Dist.). In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 629 N.E.2d 500 (9th Dist.1993). If the totality of the instructions clearly and fairly expresses the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 45. "A strong presumption exists in favor of the propriety of jury instructions." *Schnipke v. Safe-Turf Installation Group, L.L.C.*, 190 Ohio App.3d 89, 2010-Ohio-4173, 940 N.E.2d 993, ¶ 30 (3d Dist.), citing *Burns v. Prudential Sec., Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 41 (3d Dist.).

**{¶29}** With respect to Robinson's commission claim, the trial court instructed the jury as follows:

> The undisputed evidence shows that Turoczy Bonding Company has agreed to pay Mr. Robinson 40 percent of any payment that he or Turoczy Bonding Company received for a bail bond that he sold that equaled or exceeded $5,000, and 30 percent of any payment he or Turoczy Bonding Company received for a bail bond he sold that was less than $5,000. Mr. Robinson earned a commission as part of any payment that he or any authorized employee of Turoczy Bonding Company received for a bail bond he sold. He did not earn a commission for money that a bond purchaser failed to pay him or Turoczy Bonding Company.

**{¶30}** Turoczy Bonding objected to the instruction on the basis that it included language referring to payment that "any authorized employee of Turoczy Bonding Company received." Specifically, defense counsel objected as follows:

> I propose that Mr. Robinson earned a commission as part of any payment for any premium actually paid and collected.
>
> I don't think there is enough evidence that he was entitled to anything collected by any authorized employee. I think that [Elizabeth] has been dismissed from this case. That's what I think their theory of the case was at the beginning. She's testified that she's not an authorized employee, authorized agent, to do anything on behalf of the company.

**{¶31}** We cannot say that the trial court abused its discretion in refusing to accept defense counsel's proposed change. As discussed above, there was evidence presented that would allow the jury to reasonably conclude that Elizabeth was an authorized employee to accept payment from a client for a bail bond that Robinson sold. Aside from Elizabeth expressly testifying that she was an employee of Turoczy Bonding in 2010 and that she would collect cash payments from clients, she also testified that she may have collected money for Robinson from Turoczy Bonding. Further, Turoczy Bonding paid Robinson based on weekly reports completed by Donnell or Elizabeth on Robinson's behalf. This evidence coupled with Robinson's testimony supported the trial court's instruction.

**{¶32}** Turoczy Bonding further claims that the instruction was inadequate and misleading because "Robinson was not entitled to any commissions paid on a payment

plan if Turoczy was not actually paid." But the instruction expressly stated as much: "He did not earn a commission for money that a bond purchaser failed to pay him or Turoczy Bonding Company." To the extent that Turoczy Bonding now complains that the trial court should have provided an agency instruction, we find that it has waived this argument by not requesting such an instruction. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997) (failure to request a jury instruction generally results in the waiver of the issue on appeal).

{¶33} Having found no abuse of discretion in the instruction given, we overrule the third assignment of error.

### E. Damages

{¶34} In its fourth assignment of error, Turoczy Bonding argues that the trial court erred in not dismissing the case because the damages were merely speculative. According to Turoczy Bonding, "Robinson could not testify with any certainty as to the damages allegedly owed," and therefore his action should have been dismissed. We find these arguments to lack merit.

{¶35} First, under Ohio law, "[t]he uncertainty which prevents a recovery of damages is generally uncertainty as to the fact of the damages, not the amount." *Bemmes v. Pub. Emp. Retirement Sys.*, 102 Ohio App.3d 782, 789, 658 N.E.2d 31 (12th Dist.1995), citing 22 American Jurisprudence 2d, Damages, Section 25 (1988, Supp.1995). Ohio courts consistently recognized that recovery on a breach of contract is precluded only when the existence of damages is uncertain, not when the amount is

uncertain. *Woehler v. Brandenburg*, 12th Dist. Clermont No. CA2011-12-082, 2012-Ohio-5355, ¶ 35; *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, 8th Dist. Cuyahoga No. 94719, 2011- Ohio-107, ¶ 36.

**{¶36}** Second, we disagree that Robinson failed to satisfy his burden to prove his damages to a reasonable degree of certainty to support the award given. We find that Turoczy Bonding misconstrues Robinson's statements and that they do not support its claim that Robinson could not testify to any reasonable certainty as to the damages amount.

**{¶37}** As a general rule, "an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort." *Rhodes v. Rhodes Indus., Inc*., 71 Ohio App.3d 797, 808-809, 595 N.E.2d 441 (8th Dist.1991). A plaintiff can only be compensated for damages for breach of contract for "an amount that is established by the evidence with reasonable certainty." *Kinetico, Inc. v. Indep. Ohio Nail Co.*, 19 Ohio App.3d 26, 30, 482 N.E.2d 1345 (8th Dist.1985). But if sufficient evidence is presented from which the jury could award damages, then the jury's verdict should not be disturbed. *Fiorilli Constr., Inc.* at ¶ 38.

**{¶38}** We find that sufficient evidence was presented to support the damages award in this case and that the amount of damages is established by the evidence with reasonable certainty. Robinson presented all of his receipts in support of the bonds that

he wrote and testified in detail as to the commissions that he had not been paid but owed. He further offered a detailed spreadsheet that was admitted as an exhibit and not challenged on appeal, which summarized the unpaid commission owed on each bond. To the extent that Robinson's evidence could not account for whether Turoczy Bonding received payment on the financed bonds that Robinson sold, and Turoczy Bonding presented credible evidence that it never received payment on those financed bonds, the jury clearly deducted this amount from its damages award. The jury also obviously took into account some of the stated errors in Robinson's receipt book. But the mere fact that Robinson had some inaccuracies in his recordkeeping does not preclude recovery on the other properly supported claims for unpaid commissions.

{¶39} The fourth assignment of error is overruled.

### F. Prejudgment Interest

{¶40} In its final assignment of error, Turoczy Bonding argues that the trial court erred when it granted prejudgment interest sua sponte and without holding a hearing. We disagree.

{¶41} Relying on the Twelfth Appellate District's decision in *Nguyen v. Chen*, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, Turoczy Bonding argues that the trial court erred in awarding prejudgment interest on a breach of contract claim without a motion and without a hearing. Although the court in *Nguyen* found that the trial court erred in failing to hold a hearing based on the plain language of the statute, the court was addressing subsection R.C. 1343.03(C), which applied specifically to "a civil action that

is based on tortious conduct." The court was not discussing R.C. 1343.03(A), which governs a breach of contract claim as presented in this case. *See Waina v. Abdallah*, 8th Dist. Cuyahoga No. 86629, 2006-Ohio-2090, ¶ 55 ("award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A)"). Thus, the decision in *Nguyen* is not applicable.

{¶42} Conversely, the subsection that governs the instant case, R.C. 1343.03(A), does not contain the same requirement to hold a hearing. The statute provides as follows:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶43} This court has consistently recognized that in a breach of contract case between private parties where liability is established, "the trial court does not have discretion in awarding prejudgment interest." *Fiorilli Constr., Inc.*, 8th Dist. Cuyahoga No. 94719, 2011-Ohio-107, at ¶ 57, citing *Waina, supra*; *Reminger & Reminger Co., L.P.A. v. Fred Siegel Co.*, 8th Dist. Cuyahoga No. 77712, 2001 Ohio App. LEXIS 760 (Mar. 1, 2001). Indeed, "where a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law." *Id.*

**{¶44}** Thus, based on the argument raised, we find no error in the trial court's granting of prejudgment interest without holding a hearing or waiting for a motion.

**{¶45}** The final assignment of error is overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellee recovers from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR