[Cite as *Torres v. Concrete Designs, Inc.* , 2019-Ohio-1342.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 105833 and 106493**

---

## KIARA E. TORRES, ET AL.

PLAINTIFFS-APPELLEES

vs.

## CONCRETE DESIGNS INC., ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-12-795422 and CV-12-795474

**BEFORE:** Celebrezze, J., S. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 11, 2019

**ATTORNEYS FOR APPELLANTS**

**For Concrete Designs, Inc. and Brian M. English**

Clifford C. Masch
Reminger Co., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115

Jan L. Roller
Giffen & Kaminski, L.L.C.
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114

**For Westfield Insurance Co.**

John J. Haggerty
Fox Rothchild, L.L.P.
2700 Kelly Road, Suite 300
Warrington, Pennsylvania 18976


**ATTORNEYS FOR APPELLEES**

**For Kiara E. Torres**

Gregg D. Garfinkel
John M. Gundy
Gundy Law Firm, L.L.C.
6105 Parkland Boulevard, Suite 140
Mayfield Heights, Ohio 44124

**For Jovanny Martinez**

Deborah W. Yue
1991 Crocker Road, Suite 600
Westlake, Ohio 44145

Richard C.O. Rezie
Gallagher Sharp
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

**For Joshua Rojas**

Ellen M. McCarthy
Andrew R. Young
Don J. Young
Young & McCarthy, L.L.P.
31387 Lorain Road
North Olmsted, Ohio 44070

Patrick Merrick
14701 Detroit Avenue, Suite 415
Lakewood, Ohio 44107

ON RECONSIDERATION[1]

FRANK D. CELEBREZZE, JR., J.:

{¶1}     Defendants-appellants, Brian English ("English"), Concrete Designs, Inc.
("Concrete Designs"), and Westfield Insurance ("Westfield") (collectively "appellants") bring
this appeal challenging the trial court's denial of appellants' motion for a new trial, the trial
court's denial of their motion for judgment notwithstanding the verdict, the stipulation regarding
the "permanent and substantial physical deformity" interrogatory, the award of noneconomic
damages greater than $350,000, and the trial court's award of prejudgment interest.   After a
thorough review of the record and law, this court affirms in part, and vacates in part.

## I. Factual and Procedural History

{¶2} In the early morning hours of November 15, 2010, plaintiffs-appellees, Kiara Torres
("Torres") and Joshua Rojas ("Rojas") were passengers in a car driven by Jovanny Martinez
("Martinez") (collectively "appellees").   Rojas was seated in the front passenger seat, Torres was

---

[1]     The original announcement of decision, *Torres v. Concrete Designs, Inc.*, 8th Dist. Cuyahoga Nos.
105833 and 106493, 2018-Ohio-5345, released December 27, 2018, is hereby vacated.   This opinion, issued upon
reconsideration, is the court's journalized decision in this appeal.    *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

seated in the rear passenger seat, and a third passenger, Yareline Santiago, was seated in the rear driver's seat. Martinez's car was involved in an accident with a dump truck driven by English. As a result of the accident, Rojas and Torres suffered severe injuries.

{¶3} Torres and Rojas filed an action against Martinez, English, and Concrete Designs. The separate complaints[2] alleged negligence against English and negligent entrustment against Concrete Designs. Rojas and Torres alleged that English cut off Martinez's car as English was changing lanes, ultimately causing the accident. Martinez also alleged that English caused the accident. English alleged that Martinez's car rear-ended his dump truck, failing to keep the assured clear distance.[3]

{¶4} The case proceeded to a jury trial on September 18, 2014. The jury, on October 14, 2014, returned verdicts in favor of Rojas and Torres. The jury found that appellants were solely at fault in the collision — Martinez was found to have no liability. The jury awarded Rojas $8.2 million in economic damages and $26.4 million in noneconomic damages for a total of $34.6 million in compensatory damages. The jury awarded Torres $1.8 million in economic damages and $6 million in noneconomic damages for a total of $7.8 million in compensatory damages.

{¶5} On October 21, 2014, Rojas and Torres filed a joint motion for prejudgment interest. Thereafter, on November 11, 2014, appellants filed a motion for a new trial. A hearing on appellants' motion was held on April 20, 2015. On May 1, 2015, Westfield filed a motion to intervene pursuant to Civ.R. 24, which was granted on May 14, 2015. On May 27, 2015, the

---

[2] Torres filed an action in Cuyahoga C.P. No. CV-12-795422, and Rojas filed an action in Cuyahoga C.P. No. CV-12-795472. These separate complaints were consolidated at the trial court level.

[3] Martinez was charged in Cuyahoga C.P. No. CR-10-545271-A with two counts of aggravated vehicular assault, third-degree felonies in violation of R.C. 2903.08(A)(2)(b). Martinez ultimately pled guilty to one count of negligent assault, a third-degree misdemeanor in violation of R.C. 2903.01(A).

court denied appellants' motion for a new trial. On August 20, 2015, appellants appealed from the trial court's denial of their motion for a new trial to this court.

{¶6} In *Rojas v. Concrete Designs, Inc.,* 8th Dist. Cuyahoga Nos. 103418 and 103420, 2017-Ohio-379, this court found that the trial court failed to dispose of the negligent entrustment cause of action. As a result, this court dismissed the appeal for lack of a final appealable order. *Rojas* at ¶ 14.

{¶7} Upon remand, on April 4, 2017, the trial court held a hearing on the negligent entrustment claims. The trial court found that all parties were in agreement that the negligent entrustment claims were not pursued by Rojas and Torres. On April 25, 2017, the trial court issued a judgment entry dismissing the negligent entrustment claims without prejudice.

{¶8} On April 4, 2017, the trial court also heard arguments relative to Rojas's and Torres's joint motion for prejudgment interest. The trial court granted Rojas's and Torres's motion for prejudgment interest, and awarded prejudgment interest to Rojas in the amount of $2,592,744 and to Torres in the amount of $954,603. The trial court further found that Torres's prejudgment interest award accrued on January 11, 2011, and Rojas's accrued on September 1, 2011.

{¶9} On May 23, 2017, appellants filed a second motion for a new trial and a motion for judgment notwithstanding the verdict as to the finding that Torres had sustained a "permanent and substantial physical deformity."[4] The trial court held a hearing on appellants' motions on October 16, 2017. On November 1, 2017, the trial court issued a judgment entry denying appellants' motions. It is from this November 1, 2017 judgment entry denying appellants'

---

[4] In addition, appellants filed a motion for recusal of the trial court judge regarding a purported conflict that existed with the trial court judge and an employee who provided therapy to Rojas. The trial court denied this motion and it is not the subject of this appeal.

motions and the trial court's April 4, 2017 order awarding prejudgment interest to Rojas and Torres that appellants bring this instant appeal, assigning the following nine assignments of error for our review:

> I.      The trial court erred by failing to grant a new trial on the verdicts against [appellants] and in favor of Martinez based on excessive noneconomic damages that appear to be given under the influence of passion or prejudice, and the presumed prejudice on the liability verdicts.
>
> II.      The trial court erred in failing to grant a new trial on the verdicts against [appellants] and in favor of Martinez for the misconduct that resulted in those verdicts.
>
> III.      The trial court erred by failing to grant [appellants] new trial against Torres based on her excessive and unsupported economic damages.
>
> IV.      The trial court erred by failing to grant [appellants] notwithstanding the verdict on the issue of whether Torres sustained a "permanent and substantial physical deformity."
>
> V.      The trial court erred by finding a stipulation to Rojas having a "permanent and substantial physical deformity."
>
> VI.      The trial court erred by failing to mold Rojas'[s] and Torres'[s] noneconomic damages to $350,000 each.
>
> VII.      The trial court erred finding that prejudgment interest accrued for Rojas on the date he gave Westfield written notice by facsimile and for Torres on the date she gave Westfield written notice by non-certified mail.
>
> VIII.      In awarding prejudgment interest, the trial court erred by finding that Rojas and Torres did not fail to make a good-faith effort to settle the case.
>
> IX.      In awarding prejudgment interest, the trial court erroneously found that Westfield failed to make a good-faith effort to settle the case in not performing a rational evaluation of English and Concrete Designs' risks and liability.

## II.   Law and Analysis

### A.   Motion for a New Trial

{¶10} In their first, second, and third assignments of error, appellants argue that the trial court erred in denying their second motion for a new trial pursuant to Civ.R. 59(A).

This court reviews a trial court's decision on motions for a new trial for an abuse of discretion where the argument addresses an issue that is within the trial court's discretion. *Robinson v. Turoczy Bonding Co.*, 8th Dist. Cuyahoga No. 103787, 2016-Ohio-7397, ¶ 23. An abuse of the trial court's discretion is connoted by a decision that is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Where the argument addresses an issue of law, such as whether the judgment is contrary to law or the court made an error of law, this court reviews that decision de novo, or without deference to the trial court's decision. *Robinson* at ¶ 23.

*Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, ¶ 12.

### 1. Excessive Noneconomic Damages

{¶11} In their first assignment of error, appellants argue that the trial court should have granted their motion for a new trial pursuant to Civ.R. 59(A)(4) because Rojas's and Torres's awards of noneconomic damages was excessive.

{¶12} Civ.R. 59(A) allows a litigant to challenge a verdict on any one of ten grounds. Appellants contend that they are entitled to a new trial under Civ.R. 59(A)(4), which provides a new trial due to "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."

{¶13} Civ.R. 59(A)(4) has two elements, (1) an excessive or inadequate award, and (2) evidence of passion or prejudice. "Size, per se, will not suffice for proof of passion or prejudice." *Pearson v. Cleveland Acceptance Corp.*, 17 Ohio App.2d 239, 245, 246 N.E.2d 602 (8th Dist.1969). "'[A] judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are of such reprehensible and heinous nature as to constitute prejudice.'" *Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945, ¶ 67 (8th Dist.), quoting *Hitson v. Cleveland*, 8th Dist. Cuyahoga No. 57741, 1990 Ohio App. LEXIS 5466 (Dec. 13, 1990).

### a. Passion or Prejudice

{¶14} Appellants argue that improper remarks made by Torres's and Rojas's counsel inflamed the jury's passion and prejudice. Here, appellants take issue with (1) remarks that characterized appellants' counsel as a liar, (2) remarks that English's retention of counsel was evidence of liability, (3) remarks that exploited English's criminal history, (4) remarks by Rojas's counsel that broke the "golden rule," and (5) Rojas's counsel personally vouched for the credibility of witnesses. Appellants further argue that the cumulative effect of these remarks had a prejudicial effect.

{¶15} We first note that as a general rule, "[c]ounsel is allowed wide latitude in presenting oral argument although at all times counsel is subject to the supervision of the trial judge." *Di v. Cleveland Clinic Found.,* 2016-Ohio-686, 60 N.E.3d 582, ¶ 104 (8th Dist.), citing *Yerrick v. E. Ohio Gas Co.*, 119 Ohio App. 220, 223, 198 N.E.2d 472 (9th Dist.1964).

> "[T]he determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Therefore, the trial court's determination will not be reversed absent an abuse of discretion." (Citations omitted.) *Pesek v. Univ. Neurologists Assn.*, 87 Ohio St.3d 495, 501, 721 N.E.2d 1011 (2000). An abuse of discretion is indicated by a court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62. However, that discretion is not absolute. Where "gross and abusive conduct occurs, the trial court is *bound, sua sponte, to correct the prejudicial effect of counsel's misconduct*." (Emphasis sic.) *Snyder v. Stanford*, 15 Ohio St.2d 31, 37, 238 N.E.2d 563 (1968).

*Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 57.

{¶16} Furthermore,

"Except where counsel, in his opening statement and closing argument to the jury,

grossly and persistently abuses his privilege, the trial court *is not required to*

*intervene sua sponte* to admonish counsel and take curative action to nullify the

prejudicial effect of counsel's conduct. Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take proper action thereon." (Emphasis sic.) *Snyder* [at paragraph one of the syllabus], superseded by rule on other grounds as stated in *King v. Branch Motor Express Co.*, 70 Ohio App.2d 190, 197, 435 N.E.2d 1124 [2d Dist.1980].

*Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 40.

{¶17} In our review of the extensive trial transcript, we note that appellants failed to object to the large majority of remarks made in opening statements and closing arguments with which they now take issue. Indeed, trial counsel objected to only one noteworthy remark. A party must generally raise a timely objection to preserve a claim of error. *Villella v. Waikem Motors, Inc.,* 45 Ohio St.3d 36, 39-40, 543 N.E.2d 464 (1989). Failure to do so prevents reversal absent gross and persistent abuse of counsel's privilege in closing argument.[5] *Snyder* at 37-38.

{¶18} In reviewing the entirety of these proceedings, we note that opening and closing statements are not evidence. *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 27, citing *State v. Spaqi*, 8th Dist. Cuyahoga No. 69851, 1997 Ohio App. LEXIS 713 (Feb. 27, 1997). The trial judge in this instance instructed the jury as such, and the jury is presumed to follow the proper instructions of the trial court. *State v. Ahmed*, 103 Ohio

---

[5] We also note that appellants take issue with various other remarks made by Rojas's trial counsel during cross-examination of English. These remarks by Rojas's counsel were objected to by appellants' counsel and the trial court sustained the objection. Therefore, we do not include these remarks in our analysis because it is presumed the jury followed the trial court's instruction to disregard such remarks.

St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. Indeed, the "presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Here, we note the following charge to the jury with regard to this issue:

> [C]ertain statements that were made during the trial that were ordered stricken when I sustained an objection and then you were instructed to disregard the answer, and you are not to construe the evidence in the case as if any of the stricken comments or statements were never made, okay? You're to ignore them basically.

(Tr. 1453-1454.)

{¶19} The large majority of the remarks with which appellants take issue were made during closing arguments. "Closing argument allows counsel to summarize the evidence presented and assist the jury in analyzing, evaluating, and applying the evidence." *Kassay v. Niederst Mgt.*, 8th Dist. Cuyahoga No. 106016, 2018-Ohio-2057, ¶ 43, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 99581, 2014-Ohio-490, ¶ 29; *State v. Merrill*, 22 Ohio App.3d 119, 124, 489 N.E.2d 1057 (8th Dist.1984). "'A [party] may freely comment in closing argument on what the evidence has shown and what reasonable inferences the [party] believes may be drawn therefrom.'" *Peffer* at ¶ 27, quoting *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.). However, "[a]n attorney should not express his [or her] personal belief or opinion as to the credibility of a witness or as to the guilt of the accused or allude to matters which are not supported by admissible evidence." *State v. Royce*, 8th Dist. Cuyahoga No. 61897, 1993 Ohio App. LEXIS 2788, 7 (June 3, 1993), citing *State v. Smith,* 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). To this end, we note the trial court's following charge to the jury on this issue:

Evidence does not include statements of counsel during the trial. The opening statements, nor the closing arguments of counsel are to be construed as evidence either. They are made to assist you in arriving at a just verdict, but they are not evidence.

(Tr. 1453.)

**{¶20}** Appellants contend that Rojas's and Torres's counsel made specific remarks in closing arguments that portrayed appellants' counsel as a liar. Here, we note the following remarks from both Rojas's and Torres's counsel's closing arguments:

[Rojas's counsel]: If you play a movie in your mind of [English's] version of the accident versus [Martinez's] version of the accident, [Martinez's] version starts and finishes completely. [English's] version has holes in it, a lot of holes in it, to make it very difficult to determine where [English is] at.

(Tr. 1499.)

[Rojas's counsel]: I think [the evidence] is pretty clear and the evidence is overwhelming that [English] is, if not 100 percent at fault, substantially at fault for this accident. Defense counsel is going to say 100 percent, 0 percent for either one and that's the only way you do it.

It's within your province to determine and apportion the fault.

(Tr. 1496.)

**{¶21}** Furthermore, we note Rojas's counsel's remarks in his closing argument rebuttal:

[Rojas's counsel]: [Appellants' counsel] is not telling you the truth about the law. In fact, I think she's very plainly not telling the truth about the law. You're going to receive the interrogatories, which is nothing more than a fancy word for questions. They are jury questions, and it asks you specifically if both [Martinez and English] are negligent?

If they are both negligent and you agree, then you can apportion the fault. It isn't 100 percent or nothing.

(Tr. 1589.)

[Torres's counsel]: I want to agree with one thing [Rojas's counsel] said. There's only one party here trying to deceive you, to do wordsmithing, to distort the facts in this case and that is [appellants' counsel] and [English].

(Tr. 1594.)

**{¶22}** We also note these remarks made by appellants' counsel, which preceded Rojas's counsel's rebuttal remarks:

> [Appellants' counsel]: There's only one cause, and it can't be both ways. It cannot be that * * * [Rojas] was injured by both [Martinez] and [English] * * *[.]
>
> It's either a rear-end accident or it is a cutoff (indicating). Either way. It has got to be one or the other. It cannot be both. * * * It's all or nothing.

(Tr. 1528-1529.) First, we note the following charge to the jury on this topic: "what percentage of fault should be assigned to each defendant." (Tr. 1460.) Considering these particular remarks in context with appellants' counsel's remarks, we do not agree that these remarks cast appellants' counsel as a liar especially when taken in context of the entirety of the parties' closing arguments. These remarks illustrate an attempt by Rojas's counsel to clarify the law as to the parties' theories regarding liability for the accident. Thus, these remarks did not prejudice appellants.

**{¶23}** Appellants also contend that Rojas's and Torres's counsel made improper remarks that were offered as evidence of appellants' liability. Here, appellants contend that these remarks suggested that English's cooperation with the police on the night of the accident and his retention of counsel demonstrated his liability. Specifically, we note the following comments made during opening statements:

> [Rojas's counsel]: [Martinez] does not have an attorney that's involved at this time. [Martinez is] going to testify during that time he didn't have an attorney involved, he did not have a law firm helping, he did not have an accident reconstructionist talking to the police or really explaining what happened in the accident so that the police have both sides of the story without jumping to conclusions.

(Tr. 409.)

[Rojas's counsel]:   [Martinez] comes up with a plea because he's worried about two things.   You're going to hear his testimony.   He's worried about going to jail, so he pleads guilty to a negligent assault on this.   And you're going to hear about that.   He's defended by a public defender.   He didn't have the resources that we're all going to have here today, all the accident reconstructionists to evaluate everything.   So he comes up with a plea.   And he was also — he was told that he can't see his friends while the prosecution was pending.   So he just wanted to be able to convalesce and be with this friends; so that when [Rojas] came out of the coma, he could be there to comfort his friends and be part of that.

(Tr. 411-412.)

{¶24} In addition, we note the following remarks during closing arguments:

[Rojas's counsel]:   While [Torres] and [Rojas] were in the hospital, * * * [English] got a jump strategically maneuvering in this case and what happened here in this courtroom. * * * [W]ithin three weeks of this particular accident, [English] had formulated his troops and started working towards strategically defending this case.   If this is truly just an automobile rear-end accident or an assured clear distance case, why do you need to hire an attorney?   Why do you need to hire an accident reconstructionist?   Why do you need to defend just a simple auto rear-ender?   Why do you have to go to the great expense that they have gone to in order to defend this case by hiring a firm and an accident reconstructionist?   * * * If this is a simple rear-end accident case, then you don't need to create this defense and create this group of folks to come in and defend this particular case. * * * [English] didn't understand what he saw [when he changed lanes].   He didn't move when it was safe and he became the hazard, and he knows that he became the hazard.   That's why the attorneys and everybody were involved so early in this case.

(Tr. 1480-1483.)

[Rojas's counsel]:   We had to file a lawsuit in order to find out what was truly behind all of the issues and statements that were raised in the police report, because some statements didn't make sense, some statements made sense, so we filed a lawsuit against both [English] and [Martinez] in order to understand truly what happened, and the only way we can understand truly what happened in this case is by filing that lawsuit and then talking with the various parties.

(Tr. 1484.)

{¶25} In support of appellants' arguments here, appellants direct our attention to

*Sizemore v. Fletcher*, 921 F.2d 667 (6th Cir.1990), where a writ of habeus corpus was granted on

prosecutorial misconduct grounds. In *Sizemore*, the Sixth District noted in particular the "frequency and deliberateness" of the prosecutor's comments regarding the defendant consulting with counsel. The prosecutor made statements that suggested to the jury that the defendant hired an attorney to create an alibi, or to "take[] care of everything" or "get . . . [his] story straight." *Sizemore* at 671. The court went on to note that "[s]uch statements strike at the core of the right to counsel, and must not be permitted." *Id.*, citing *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir.1980). The court further noted that "the trial transcript reveals intentional and repeated attempts by the prosecutor to question Sizemore's motives for consulting with counsel, and she clearly invited the jurors to view Sizemore's ability to hire several attorneys with suspicion." *Id.*

{¶26} To the extent that appellants rely upon *Sizemore,* we note that it concerned a writ of habeas corpus based upon prosecutorial misconduct. The prosecutor's remarks in *Sizemore* amounted to misconduct because the prosecutor commented on the right of the accused to retain counsel pursuant to the Sixth Amendment to the United States Constitution. However, the instant matter is not a criminal matter and there exists no constitutional protections in civil matters akin to the constitutional protections that so prejudiced Sizemore. Indeed, the remarks in *Sizemore* amounted to prosecutorial misconduct because the remarks struck at the core of constitutional protections afforded to defendants in criminal matters. Thus, even if we were to agree with appellants that these remarks prejudiced them, it would not require us to reverse the trial court's denial of appellants' motion for a new trial. Lastly, these remarks were made in opening statements and closing arguments, and therefore, were not evidence.

**{¶27}** Appellants also contend that Rojas's and Torres's counsel vouched for the "justness" of Rojas's and Torres's cause and vouched for the credibility of their witnesses. Appellants take issue with the following remarks:

> [Rojas's counsel]:   If you play a movie in your mind of [English's] version of the accident versus [Martinez's] version of the accident, [Martinez's] version starts and finishes completely.   [English's] version has holes in it, a lot of holes in it, to make it very difficult to determine where [English is] at.

(Tr. 1499.)

> [Rojas's counsel]:   You have to look at the credibility of the witnesses too. Who was [English] staying with? * * * Where was [English] going?   He couldn't tell us even the last name of the gentleman he was staying with on the morning — on that Sunday morning.   His route from Brecksville to the supposed job estimate on East 55th Street is unusual, and then he doesn't even know what the job is and can't articulated [sic] what that job is that he wants to go to.
>
> All these things go his credibility and his believability at the end of the day. Who was he staying with?   What route was he taking?   Who was he meeting up with thereafter?

(Tr. 1497-1498.)

> [Torres's counsel]:   It really comes down to credibility.   That's what it comes down to, credibility.   Who do you believe?   What expert do you believe?   * * * I think the evidence shows that the version by Martinez is just more credible and more believable.

(Tr. 1522.)

**{¶28}** We do not find these comments to be improperly vouching for the credibility of a witness.   Indeed, these comments relate to what counsel argued the evidence showed and what reasonable inferences they argued should be drawn therefrom.   The accident occurred in the early morning hours at approximately 5:00 a.m.   At trial, English stated that he was in route to do an estimate on a concrete job.   Therefore, Rojas's and Torres's counsel's above statement references evidence that was adduced at trial and what reasonable inferences the jury could have drawn from that evidence.   We find no prejudice in these remarks; these remarks represent

legitimate arguments regarding the credibility of various witnesses based on evidence introduced at trial.

{¶29} Appellants take issue with the following remarks:

> [Rojas's counsel]: [Rojas is] a sweetheart of a guy. I think you're going to really like him. I hope that he's in good spirits and in a good mood because that's how I've come to know him, and I hope you come to know him in the same way.

(Tr. 387.)

> [Torres's counsel]: I can tell you, when I first heard the circumstances of this accident, and again, it's been four years, my first assumption was that it was probably the kids' fault,[6] because there's four kids, and [English] is a guy that looks just like me, he's my age. I assumed the kids must have done something wrong. But I have had the benefit now of four years of my life involved in this case, four years of learning the facts, taking depositions. And I no longer think that. I think that [English] is responsible for this accident.
>
> [Appellants' counsel]: Objection to his personal —
>
> THE COURT: Keep going.
>
> [Torres's counsel]: I believe that because you're going to hear testimony[.]

(Tr. 418-419.)

{¶30} The remark from Rojas's counsel is not a comment on Rojas's credibility as a witness. Indeed, Rojas did not testify at trial. Additionally, with regards to Rojas's counsel's remark that he thought the evidence was going to show English was liable was simply his obvious theory on the case. It certainly is not impermissible for a plaintiff's counsel to remark in opening statements that a defendant is responsible or liable for an accident. In the instant matter, this was a permissible topic during opening statements, although it could have been stated in a more proper way, i.e., "the evidence will show that English is responsible for the accident."

---

[6] Referring to the individuals traveling in Martinez's vehicle.

**{¶31}** However, the remarks by Torres's counsel stating that he thought "English [was] responsible for this accident" and that he "believe[d] that because [the jury is] going to hear the testimony" are impermissibly vouching for the culpability of a litigant. *See State v. Alfieri,* 132 Ohio App.3d 69, 84-85, 724 N.E.2d 477 (1st Dist.1998) (where a prosecuting attorney's statement in rebuttal closing arguments that "I've been practicing law and doing these [sic] for a long time. David Bahler is one of the best witnesses I've ever seen or had in a courtroom" amounted to "personally vouching for the credibility of the state's witness" and "was an invasion on the province of the jury[.]"). Although we find this remark to be impermissibly vouching, when we assess "the effect of the misconduct within the context of the entire case, and more particularly the entire closing argument, we are unable to conclude that it had the effect of depriving" appellants of a fair trial. *Alfieri* at 85.

**{¶32}** Lastly, to the extent that appellants' counsel argue that these remarks also violated the Ohio Rules of Professional Conduct, this court does not have jurisdiction over appellants' assertion. *Buck v. Maloney*, 102 Ohio St.3d 250, 2004-Ohio-2590, 809 N.E.2d 20, ¶ 7-8 (the Supreme Court of Ohio has exclusive and absolute jurisdiction over the discipline of attorneys); *State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579, ¶ 36 (8th Dist.) (appellate courts "have no authority to address claimed violations of the Rules of Professional Conduct — that authority rests solely with the Ohio Supreme Court.").

**{¶33}** Appellants further argue that the remarks regarding English's criminal history prejudiced appellants. The remarks appellants' take issue with here were objected to by appellants' counsel. Moreover, this objection was sustained by the trial court. As stated above, the trial court instructed the jury to disregard such a remark and the jury is presumed to follow the proper instructions of the trial court. *Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813

N.E.2d 637; *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. Thus, we cannot agree with appellants that the remarks regarding English's criminal history prejudiced appellants.

**{¶34}** Appellants also argue that Rojas's counsel violated the "golden rule." A "golden rule" argument exists when counsel appeals to the jurors to abandon their position of impartiality by placing themselves in the place of one of the parties. *Cooley v. Leaseway Transp. Co. USA,* 8th Dist. Cuyahoga Nos. 62198 and 62732, 1993 Ohio App. LEXIS 2631, 6 (May 20, 1993). "Generally, a 'golden rule' argument is improper. However, a 'golden rule' comment during closing argument is not *per se* prejudicial so as to warrant a new trial." *Schroeder v. Parker,* 8th Dist. Cuyahoga No. 73907, 1998 Ohio App. LEXIS 5919, 8 (Dec. 10, 1998), citing *Dillon v. Bundy*, 72 Ohio App.3d 767, 775, 596 N.E.2d 500 (10th Dist.1991).

**{¶35}** Appellants contend that Rojas's counsel's following remarks violated the "golden rule":

> [Rojas's counsel]: If you use $150 an hour figure for 16 waking hours to be like [Rojas] and there was a classified ad taken out that you were looking at to respond to, would you take that job for $150 an hour to be like Joshua Rojas? The answer is probably not.
>
> [Y]ou are supposed to take 10,000 steps a day to stay healthy; so if you put a dollar figure to the 10,000 steps, if it is 10 cents a day — or 10 cents per step for 10,000 steps, that's like a $1,000 a day.
>
> It is not $150 an hour for 16 hours, but it is $1,000 a day. Would you take the job of being [Rojas] for an annual salary of $365,000? The answer is probably not. These are the things we need to value.

(Tr. 1515-1516.)

**{¶36}** In *Hunt v. Crossroads Psych. & Psychological Ctr.*, 8th Dist. Cuyahoga No. 79120, 2001 Ohio App. LEXIS 5388, 8 (Dec. 6, 2001), this court reviewed statements made by defense counsel at trial on claims of medical negligence and wrongful death. The remarks at issue in *Hunt* were as follows:

Ms. Ried:     As you listen to the evidence in this case, particularly when you listen to the evidence presented on March 3, 1999, I want to ask you to do something for me, I want you to try to walk in Dr. Schulz's shoes knowing what he knew on that day. Don't look back at this case in hindsight, knowing what happened —

Mr. Perantinides:     Excuse me, your honor, I have to object to that argument.

The Court:     Overruled.

Ms. Reid:     I ask you to walk in Dr. Schulz's shoes, sit in his chair as he sat with Matthew Hunt and looked at him face to face for over an hour * * *.

*Id.* at 7.     Mindful that trial counsel is afforded great latitude during arguments before the court, this court stated that

we are not persuaded that those statements resulted in any prejudice to the appellant.     The record does not demonstrate that the comments were so heinous or reprehensible that the jury would abandon their position of impartiality or that the appellant would have been prejudiced by the statements.

*Id.* at 8.

{¶37} In this case, appellants' counsel failed to object to the remarks they now challenge as golden rule violations.     "A party's failure at trial to object to a 'golden rule' argument or to request from the trial court curative action by way of admonishment to jury waives any such error."     *Schroeder*, 8th Dist. Cuyahoga No. 73907, 1998 Ohio App. LEXIS 5919, at 8, citing *Yerrick*, 119 Ohio App. at 224, 198 N.E.2d 472.     Thus, appellants have waived these particular arguments.

{¶38} However, even if appellants had objected, reviewing these remarks, we do not find them to be appealing to the jurors to abandon their impartiality.     These remarks were an attempt to assist the jurors in quantifying the damages amount or providing a means of quantifying the damages amount.     As in *Hunt*, we are similarly persuaded here that the remarks made by Rojas's counsel were not so heinous or reprehensible that the jury would have abandoned their position of impartiality.     Moreover, appellants were not prejudiced by these remarks.

**{¶39}** Finally, in considering the entirety of appellants' arguments, we do not find that the cumulative effect of these remarks prejudiced appellants. The trial court concluded that these remarks "amount to nothing more than trial tactics and strategy" and we do not find that the trial court abused its discretion in that regard.

**{¶40}** After reviewing the record, this court cannot agree with appellants that Rojas's and Torres's counsel engaged in prejudicial misconduct or improperly influenced the jury through passion or prejudice. Moreover, we do not find the award of damages was "so grossly disproportionate as to shock the sensibilities." *Berry v. Lupica,* 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 39 (8th Dist.), citing *Airborne Express, Inc. v. Sys. Research Laboratories, Inc.*, 106 Ohio App.3d 498, 510, 666 N.E.2d 584 (12th Dist.1995). Furthermore, although we find the remarks concerning appellants retention of counsel impermissible, we find that these remarks were not so reprehensible or heinous that they compelled the jury's verdict. In denying appellants' new trial motion, the trial court noted that these remarks amounted to "trial strategy." In this regard, we defer to the trial court because the judge was in a better position to determine if the remarks prejudiced appellants as to require a new trial. *See Lupica* at ¶ 55. Accordingly, we do not find that the trial court abused its discretion in denying appellants' motion for a new trial.

### b. R.C. 2315.19

**{¶41}** Appellants also argue within their first assignment of error that the trial court erred in denying their new trial motion pursuant to R.C. 2315.19. More specifically, appellants contend that the damages award was the result of the improper consideration of English's wealth and the damages award was excessive compared to similar cases. R.C. 2315.19(A) provides that a defendant may file a post-judgment motion requesting "a trial court in a tort action shall

review the evidence supporting an award of compensatory damages for noneconomic loss that the defendant has challenged as excessive." "An appellate court shall use a de novo standard of review when considering an appeal of an award of compensatory damages for noneconomic loss on the grounds that the award is inadequate or excessive." R.C. 2315.19(C).

{¶42} First, we note that appellants argue here, as they did in the trial court, that a new trial should have been granted pursuant to Civ.R. 59(A) and R.C. 2315.19. However, R.C. 2315.19 is not a mechanism for a motion for a new trial, contrary to what appellants contend. R.C. 2315.19 provides a statutory mechanism for a party to file a post-judgment motion challenging an excessive award of compensatory damages. Nevertheless, we address appellants' arguments below.

{¶43} Appellants argue that these particular remarks "disingenuously cast English as a businessman who deployed great resources — at 'great expense' — to influence liability-determining events." Appellants' brief at 27. The particular remarks that appellants take issue with here have been previously highlighted above. Appellants take issue with similar statements that either portrayed English and his defense team as having expended vast financial resources or portrayed Martinez as having little to no financial resources. Appellants argue that these statements were offered to establish liability on the part of English and reduce Martinez's liability.

{¶44} Having reviewed these remarks, and having considered the entirety of the proceedings, we find no basis to reverse the trial court's judgment. Further, appellants did not object to any of these particular remarks at the trial court level.

{¶45} Appellants also argue that pursuant to R.C. 2315.19(A)(2), the verdict was excessive compared to similar cases. R.C. 2315.19(A)(2) affords a defendant the ability to

challenge a jury's award based upon "[w]hether the verdict is in excess of verdicts involving comparable injuries to similarly situated plaintiffs."

**{¶46}** Appellants specifically argue here that the jury's award of noneconomic damages to both Rojas and Torres "dwarfs" national and Ohio noneconomic damages awards for such brain injuries. We disagree.

**{¶47}** We note, as the trial court did, the following recent Cuyahoga County verdicts: (1) $27,500,000 in compensatory damages in a mesothelioma case, (2) $23,018,790 in compensatory damages to a plaintiff, in his early forties, who was a passenger on a Greyhound bus and sustained a severed lower limb extremity, a severed urethra, and had a lower limb amputated, and (3) $19,000,000 in compensatory damages in a wrongful death suit of a 41-year-old construction worker struck and killed by a motorist in a construction zone.

**{¶48}** This court's standard of review under R.C. 2315.19 is de novo. "De novo review encompasses an independent examination of the record and law without deference to the underlying decision." *Gateway Consultants Group, Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443, at ¶ 22, citing *Demeraski v. Bailey*, 2015-Ohio-2162, 35 N.E.3d 913 (8th Dist.). In our independent review of these damages awards, we do not find that the verdicts were in excess of verdicts involving comparable injuries to similarly situated plaintiffs.

**{¶49}** Therefore, the trial court did not err in denying appellants post-judgment motion pursuant to R.C. 2315.19.

**{¶50}** As to their first assignment of error, we find that these remarks were not so reprehensible or heinous that they compelled the jury's verdict. In denying appellants' new trial motion, the trial court noted that these remarks amounted to "trial strategy." In this regard, we defer to the trial court because the judge was in a better position to determine if the remarks

prejudiced appellants as to require a new trial. *See Lupica,* 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, at ¶ 55.

**{¶51}** Accordingly, appellants' first assignment of error is overruled.

### 2. Misconduct By The Prevailing Parties

**{¶52}** In their second assignment of error, appellants contend that the same remarks we highlighted above constitute misconduct by the prevailing parties pursuant to Civ.R. 59(A)(2). More specifically, appellants contend that Rojas's and Torres's counsel's remarks were so gross and abusive that the trial court should have intervened, sua sponte, to correct the misconduct.

**{¶53}** In support of their argument, appellants direct our attention to *Pesek,* 87 Ohio St.3d 495, 721 N.E.2d 1011. In *Pesek*, the Ohio Supreme Court granted a new trial on an error in the jury instructions that disposed of the appeal. The court nevertheless addressed defendant's trial counsel's improper remarks in closing arguments and noted that such remarks could be grounds for a new trial. *Id.* at 500. Plaintiff's counsel did not object to most of the remarks made by defendant's counsel, however, the court noted that '"where *gross* and *abusive* conduct occurs, the trial court is bound, *sua sponte, to correct the prejudicial effect of counsel's misconduct*."' (Emphasis sic.) *Id.* at 501, quoting *Snyder*, 15 Ohio St.2d 31, 238 N.E.2d 563.

**{¶54}** In *Pesek*, the court noted that defendant's counsel "made various assertions and drew many inferences that were simply not warranted by the evidence." *Id.* Some of the remarks that plaintiff's counsel took issue with were insults directed at plaintiff's counsel:

> This is a misrepresentation. A deliberate — and there are a lot of deliberate misrepresentations in this case and we're going to go through any number of them.
>
> * * *

What [plaintiff's counsel] did following that settlement should raise feelings of disgust in you. Disgust that the legal system would allow this to happen and disgust at [plaintiff's counsel] as an attorney.

* * *

I find that very sad that [plaintiff's counsel] would be in this courtroom in this case asking for 18 million dollars in damages and he would stand behind your back over here and laugh, folks. Actually I'm not too surprised because it fits in with everything that's been going on with this case. The half-truths, the untruths, the threatening of witnesses, the suppression of evidence. It fits [plaintiff's counsel's] personality.

*Id.* at 500. The Ohio Supreme Court further noted that

[t]o attack counsel for appellant and appellant's expert witness was inexcusable, unprincipled, and clearly outside the scope of final argument. Appellees' counsel could have zealously represented his clients without resorting to these abusive tactics. Instead, counsel for appellees transcended the bounds of acceptable closing argument, creating an atmosphere "surcharged with passion or prejudice." [*Jones v. Macedonia-Northfield Banking Co.*,] 132 Ohio St. 341, 351, 7 N.E.2d [(1937)].

*Id.* at 501-502.

{¶55} As we noted above, trial counsel is afforded great latitude in presenting their arguments to the jury. Considering the standard set forth in *Pesek*, we do not find the remarks made by Rojas's counsel or Torres's counsel to be so gross and abusive that required the court to intervene sua sponte. Therefore, we cannot say that the remarks appellants' counsel takes issue with "transcended the bounds of acceptable closing argument, creating an atmosphere surcharged with passion or prejudice." *Id.* at 500-501.

{¶56} Accordingly, appellants' second assignment of error is overruled.

### 3. Torres's Economic Damages

{¶57} In appellants' third assignment of error, appellants argue that their motion for a new trial should have been granted because the award of economic damages to Torres was not supported by the evidence and was the result of jurors' passion and prejudice.

**{¶58}** Appellants contend that pursuant to Civ.R. 59(A)(4) and (6), they are entitled to a new trial. Civ.R. 59(A) provides, in relevant part,

> A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
>
> * * *
>
> (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
>
> * * *
>
> (6) The judgment is not sustained by the weight of the evidence; however, only
>
> one new trial may be granted on the weight of the evidence in the same case[.]

**{¶59}** Regarding these arguments, this court reviews a trial court's decision on motions for a new trial for an abuse of discretion where the argument addresses an issue that is within the trial court's discretion. *Robinson*, 8th Dist. Cuyahoga No. 103787, 2016-Ohio-7397, at ¶ 23. An abuse of the trial court's discretion is connoted by a decision that is arbitrary, unconscionable, or unreasonable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{¶60}** Appellants argue the award of $1.8 million in economic damages to Torres was given under the influence of jurors' passion and prejudice. For the same reasons set forth in our analysis above, we reject appellants' arguments here as we did with appellants' first and second assignments of error.

**{¶61}** Appellants also argue that the award of $1.8 million in economic damages to Torres was excessive and not supported by the evidence. In particular, appellants take issue with the damages award amount constituting Torres's "lost earning capacity" and medical expenses. Appellants contend that there is no evidence within the record of Torres's "work-life expectancy" or Torres's medical expenses.

**{¶62}** First, we note that the jury's award of economic damages to Torres constituted all economic loss suffered as a result of her injuries. Indeed, no itemized list of the specific amounts of Torres's economic damages award exists within the record before this court.

**{¶63}** Therefore, to the extent that appellants argue that there is no evidence within the record of an amount of medical expenses, this is simply untrue. In our review of the record, in particular "Plaintiff's exhibit No. 20," we note that this exhibit clearly lists Torres's total medical expenses as $168,460.64. Thus, there was sufficient evidence within the record for the jury to make a determination as to Torres's medical expenses.

**{¶64}** If one were to conclude that the jury in fact awarded $168,460.64 in medical expenses to Torres, then the amount of $1,631,539.36 would remain for all other economic losses, including damages for work-life expectancy.

**{¶65}** "'An award of future damages for future wage loss raises two independent evidentiary concerns: (1) whether a plaintiff offered sufficient proof of future impairment; and (2) whether a plaintiff offered sufficient evidence of the extent of prospective damages flowing from the impairment.'" *Marzullo v. J.D. Pavement Maintenance*, 2011-Ohio-6261, 975 N.E.2d 1, ¶ 17 (8th Dist.), quoting *Power v. Kirkpatrick*, 10th Dist. Franklin No. 99AP-1026, 2000 Ohio App. LEXIS 3231 (July 20, 2000). "In order to recover lost earnings, a plaintiff must establish the lost earnings with reasonable certainty." *Austin v. Chukwuani*, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 21 (8th Dist.), citing *AGF, Inc. v. Great Lakes Heat Treating Co.,* 51 Ohio St.3d 177, 555 N.E.2d 634 (1990).

**{¶66}** In the instant matter, a clinical neuropsychologist, Dr. Jody Pickle, testified that Torres has an IQ of 67. Torres suffers from cognitive and behavioral functioning limitations that greatly affect her daily life. Dr. Pickle opined that Torres will never be able to work or live independently, and she does not possess the cognitive capacity to appreciate the severity of her brain injury. Dr. Pickle opined that "[Torres is] very impulsive. Her what we call executive function, which is goal-directed behavior, is diminished. [Torres] has lost the ability to kind of look into the future and see what the consequences of her behavior are going to be." (Tr. 945.)

Dr. Pickle further opined that "[y]ou get big changes in executive function, and that's goal-directed behavior, self-awareness, self-monitoring, impulsive inhibition and all those kinds of behaviors that make adults successful in managing everything for their own lives." (Tr. 952.)

{¶67} Therefore, to the extent that appellants argue that there is no evidence of Torres's work-life expectancy, we disagree. In *Marzullo*, this court was faced with a similar issue. This court expressed concern with the lack of medical testimony supporting a doctor's assumption that a plaintiff's injury rendered her unemployed for the duration of her life expectancy. *Marzullo* at ¶ 21. This court noted that the plaintiff's medical experts and her psychological expert did not testify with any reasonable degree of certainty that plaintiff's injury prevented her from obtaining her preinjury wage or from performing daily activities. *Id.* at ¶ 18.

{¶68} In the instant matter, Dr. Pickle testified to a reasonable degree of neuropsychological certainty. (Tr. 947, 949.) Therefore, there existed competent and credible medical testimony that enabled the jury to conclude that because Torres suffered injuries, her injuries prevented her from attaining any sort of work-life expectancy whatsoever.

{¶69} We also note the trial court's jury instructions on the matter:

Economic loss means financial harm to the plaintiff resulting from his or her injury, including all expenditures for medical care or treatment, rehabilitation services or other care, treatment, services, products or accommodations incurred as a result of [their] injury and any other expenditures incurred as a result of their injury other than attorney fees incurred by the plaintiff.

You will also consider what loss, if any, of earnings each plaintiff will reasonably — will with reasonable certainty sustain in the future as a proximate cause of the injury. The measure of such damage is what the evidence shows with reasonable certainty to be the difference between the amount he was capable of earning before he was injured and the amount he is capable of earning in the future in his injured condition.

(Tr. 1467-1468.) The jury could therefore award future economic damages based on any of these categories provided. *See Marzullo,* 2011-Ohio-6261, 975 N.E.2d 1, at ¶ 25.

**{¶70}** Considering the fact that Torres was 16 years old when she suffered her injuries, the economic loss criteria provided to the jury by the trial court, and the medical testimony provided by Dr. Pickle, we do not find the jury's award of economic damages to be excessive. "As the trier of fact, the jury was free to accept or reject any or all of appellants evidence relating to damages." *Id.* at ¶ 55, citing *Ayers v. Ishler*, 5th Dist. Delaware No. 11 CAE 01 0001, 2011-Ohio-4272, ¶ 60.

**{¶71}** Accordingly, appellants' third assignment of error is overruled.

### B. Judgment Notwithstanding the Verdict

**{¶72}** In their fourth assignment of error, appellants argue that the trial court erred by denying their motion for judgment notwithstanding the verdict ("JNOV") on the issue of whether Torres sustained a "permanent and substantial physical deformity."

**{¶73}** This court reviews de novo a ruling on a JNOV because it presents a question of law. *Seese v. Admr., Bur. of Workers' Comp.*, 11th Dist. Trumbull No. 2009-T-0018, 2009-Ohio-6521, ¶ 11.

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

(Citations omitted.) *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976); *see also* Civ.R. 50(A)(4).

**{¶74}** In reviewing a decision on a JNOV, this court does not weigh the evidence or evaluate the credibility of witnesses, but must determine whether there is "sufficient material evidence presented at trial on this issue to create a factual question for the jury." *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). Further, "[a]bsent a reason to do otherwise, we presume regularity in the jury's verdict." *Frederick D. Harris, M.D., Inc. v. Univ. Hosps.*, 8th Dist. Cuyahoga Nos. 76724 and 76785, 2002 Ohio App. LEXIS 1032, 1042 (Mar. 7, 2002).

**{¶75}** Appellants contend that the jury's findings that Torres's injury amounted to a "permanent and substantial physical deformity" is not supported by substantial evidence. In support of their argument, appellants note that Torres's head injuries resulted in a scar across her forehead and face, and down over the bridge of her nose. Appellants argue that the scar had healed sufficiently, and thus, there was no actual evidence of a "permanent and substantial physical deformity."

**{¶76}** Pursuant to R.C. 2315.18, Torres would be precluded from recovering more than $350,000 in noneconomic damages, unless Torres could have proven that the injuries she sustained were a "permanent and substantial physical deformity." Specifically, R.C. 2315.18(B)(3) states:

> (3) There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) [p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system[.][7]

---

[7] We note that subsection (b) states "[p]hysical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." However, this subsection does not apply to Torres's injuries.

{¶77} As an initial matter, we note that the phrase "permanent and substantial physical deformity" is not defined within R.C. 2315.18. However, the federal courts have elaborated on this issue noting that, "when viewed in the context of the other language in [R.C.] 2315.18(B)(3)(a), any 'permanent and substantial physical deformity' must be 'severe and objective.'" *Sheffer v. Novartis Pharmaceuticals Corp*., S.D.Ohio No. 3:12-cv-238, 2014 U.S. Dist. LEXIS 184614, 5 (July 15, 2014), quoting *Weldon v. Presley,* N.D.Ohio No. 1:10 CV 1077*,* 2011 U.S. Dist. LEXIS 95248 (Aug. 9, 2011). Indeed, the "statutory cap is lifted only for 'catastrophic' injuries." *Sheffer* at 3, citing *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420.

{¶78} In support of their argument, appellants direct this court's attention to *Weldon*. In *Weldon,* the trial court granted summary judgment in favor of the defendants because a "small single scar, merely 4 centimeters long," did not amount "to a severe disfigurement." *Id.* at 21. The trial court concluded that "[s]uch incidental scars did not rise to the level of 'substantial physical deformities' as required by [R.C.] 2315.18." *Id.* Thus, the plaintiff's scar was not a "substantial physical deformity" that would remove the statutory cap on damages.

{¶79} In our further review of applicable case law, we note that there are inconsistencies amongst the federal cases in applying the "permanent and substantial physical deformity" standard. For instance, in *Bransteter v. Moore,* N.D.Ohio No. 3:09 CV 2, 2009 U.S. Dist. LEXIS 6692 (Jan. 21, 2009), the plaintiff sustained a perforated bowel. The injury necessitated several surgeries and the plaintiff ultimately had a scar as a result. Noting the lack of legislative history or Ohio case law to assist in answering the question, the federal district court determined that "scarring may be so severe as to qualify as a serious disfigurement." *Id.* at 6. The court determined that the better course would be to "resolve the issue following trial testimony." *Id*.

at 7. Therefore, the district court granted plaintiff's request for a jury interrogatory for the "permanent and substantial physical deformity" issue.

{¶80} We also note *Ross v. Home Depot USA Inc.*, S.D.Ohio No. 2:12-cv-743, 2014 U.S. Dist. LEXIS 133507 (Sept. 23, 2014). In *Ross*, the plaintiff suffered injuries to her shoulder and knee that resulted in "multiple 'misshapened,' 'unnatural' and 'distorted' conditions in both her left knee and shoulder." *Ross* at 16. The defendant moved for summary judgment and argued that the plaintiff's injuries did not amount to "permanent and substantial physical deformities" pursuant to R.C. 2315.18. The plaintiff argued that whether she suffered a "permanent and substantial physical deformity" was a question to be determined by the jury. The district court ruled that the evidence presented by the plaintiff was sufficient to create an issue of fact as to whether her knee or shoulder injury amounted to a "permanent and substantial physical deformity." *Id.*

{¶81} Taking into consideration our above analysis, we note that the issue of whether Torres sustained a "permanent and substantial physical deformity" was an issue for the jury to decide. *Ross* at 17-18 (noting that "[i]f the plaintiff sets forth sufficient evidence to cross that evidentiary threshold, whether the injury indeed constitutes a 'permanent and substantial physical deformity' is an issue for the jury to decide."). Thus, there existed sufficient evidence for the jury to determine that Torres sustained "permanent and substantial physical deformities."

{¶82} In the instant matter, Torres was very seriously injured. Torres suffered an open skull fracture with intracranial hemorrhaging and a frontal sinus fracture. As a result, her injuries necessitated several operations. She is blind in her right eye and has a diminished sense of taste and smell. Because of the brain injuries, Torres suffers from cognitive and behavioral functioning limitations that affect her everyday. As noted above in our analysis of Torres's

economic damages, a clinical neuropsychologist testified to Torres's diminished cognitive capabilities and the affect it has on her daily life.

{¶83} Moreover, we note the following details of Torres's testimony:

[Torres's counsel]:   Now, I can tell you I think you look fairly fine.   Can you tell the jury what bothers you about your face?   Can you show what's different?

[Torres]:   My face, my front right here (indicating).

[Torres's counsel]:   Can you step forward and let them see a little closer?
[Torres]:   Like my scar on the front (indicating) and the whole side (indicating).

[Torres's counsel]:   What is that little indentation right there?

[Torres]:   It's a dent from when they had surgery and they put everything back in.

[Torres's counsel]:   And is there any other scars on your forehead?

[Torres]:   None besides this (indicating) one.

[Torres's counsel]:   What about the side?

[Torres]:   This all here (indicating) is all dented.

{¶84} Thus, in our review of the record, we find that there existed sufficient evidence for the jury to determine that Torres sustained "permanent and substantial physical deformities." Accordingly, appellants' fourth assignment of error is overruled.

## C.   Stipulations

{¶85} In appellants' fifth assignment of error, appellants argue that they did not stipulate that Rojas had a "permanent and substantial physical deformity."   Appellants contend that although Rojas's counsel presented an offer to stipulate that Rojas's injuries amounted to a "permanent and substantial physical deformity," the offer to stipulate was never accepted by appellants' counsel.

{¶86} A stipulation is "a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue." *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶ 12 (8th Dist.). Stipulations can further be utilized to "narrow the range of issues to be litigated." *Id.* A stipulation as to a fact effectively "renders proof [of that fact] unnecessary." *Rice v. Rice*, 8th Dist. Cuyahoga No. 78682, 2001 Ohio App. LEXIS 4983, 11 (Nov. 8, 2001). "Once entered into by the parties and accepted by the court, a stipulation is binding upon the parties as 'a fact deemed adjudicated for purposes of determining the remaining issues in the case.'" *Bodrock v. Bodrock*, 8th Dist. Cuyahoga No. 104177, 2016-Ohio-5852, ¶ 19, quoting *Dejoseph v. Dejoseph*, 7th Dist. Mahoning No. 10 MA 156, 2011-Ohio-3173, ¶ 35.

{¶87} Furthermore, where parties choose to stipulate to facts, they "'waive any error that may have occurred with respect to the fact that the trial court decided [the] case without hearing evidence presented by the parties' on the issue to which the parties stipulated." *Bodrock* at *id.,* quoting *Rice* at *id.* Thus, "it is 'fundamentally unfair' for a party to enter into a stipulation, fail to object to an alleged inaccuracy, and then argue that a stipulation is against the weight of the evidence on appeal." *Tisci v. Smith*, 2016-Ohio-635, 60 N.E.3d 525, ¶ 25 (3d Dist.), citing *Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 22.

{¶88} To the extent that appellants contend that they did not accept the stipulation that Rojas's injuries amounted to "permanent and substantial physical deformities," we note the following exchange:

> THE COURT: I wanted to know if there's an issue as to whether the injuries to either involve an amount — do they amount to a permanent and substantial physical deformity?
>
> [Rojas's counsel]: Yes.

THE COURT:    I'm asking the defendants.

[Appellants' counsel]:    They certainly do for [Rojas].    Well, say the language again from the caps statute.    Can you just read it again?

THE COURT:    "Do the injuries and losses involved amount to a permanent and substantial physical deformity?"

[Appellants' counsel]:    They don't for [Torres].

THE COURT:    You want me to submit an interrogatory to the jury as to that issue?

[Appellants' counsel]:    Well —

THE COURT:    It's okay.    If you do, you do.

[Appellants' counsel]:    I mean, permanent — is it permanent and physical?    It's not or?

THE COURT:    Amount to a permanent and substantial physical deformity.

[Appellants' counsel]:    [Torres] does not have a physical deformity and it's and.

THE COURT:    So we want an interrogatory about this?

[Appellants' counsel]:    [Rojas] has a physical deformity.

[Torres's counsel]:    What is he reading?

[Rojas's counsel]:    First of all, [Torres's counsel] is not here.

THE COURT:    It is a caps issue.

[Rojas's counsel]:    Yes, it is.    For [Rojas], I think [appellants counsel] is stipulating that [Rojas] has a substantial physical deformity.    I don't think there's an issue with regard to [Rojas].

THE COURT:    You're not getting more copies.    I'm not wasting anymore paper, but I will submit the others to the jury.    Do you agree?

[Martinez's counsel]:    Yes.

[Rojas's counsel]:    [Appellants' counsel] is saying that [Torres] does not have a substantial.

[Appellants' counsel]:    A substantial permanent physical deformity.

[Torres's counsel]:    Physical deformity would be the scars to her head when she had the surgery performed, and I'm suggesting those are, in fact, substantial physical deformities.

[Appellants' counsel]:    I would agree it is a physical deformity, but  I would disagree that it is substantial.

[Rojas's counsel]:    So we do not confuse the jury, should we pose the question for [Rojas]?

THE COURT:    No.

[Rojas's counsel]:    We are just stipulating to it.

[Appellants' counsel]:    I mean, I'm not on the record stipulating that [Rojas] has a substantial and permanent physical deformity.   I'm   just saying it is a question for the jury and that I agree that —

THE COURT:    Wait a minute.    You want this for [Rojas] as well?

[Appellants' counsel]:    No, no, I'm saying — I can just anticipate —
THE COURT:    Just as to [Torres]?

[Appellants' counsel]:    Yes.   I'm anticipating [Rojas's counsel] closing argument, [appellants' counsel] has already stipulated a substantial —

THE COURT:    It's not an issue. Don't even mention it. It is not necessary for you to mention it.

[Rojas's counsel]:    Based on the Court, after this is all over with, there is no question that [Rojas] has a substantial physical deformity.

THE COURT:    That is correct.

[Rojas's counsel]:    I won't mention it.

[Appellants' counsel]:    And I'm not objecting that it is not referenced regarding [Rojas].

[Rojas's counsel]:    I mean, I do talk about [Rojas's] physical        deformity.

[Appellants' counsel]:    Sure.   Thank you, Your Honor.   I agree.   The jury can consider it certainly for [Torres], but I disagree that it is a substantial physical deformity.

(Tr. 1403-1407.)

{¶89} First, we note that appellants' counsel did not object to the stipulation as to Rojas's injuries amounting to "permanent and substantial physical deformities." Therefore, appellants have forfeited all but plain error. The Ohio Supreme Court has recently discussed plain error in the civil context in *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 40.

> [I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process, and therefore challenged the legitimacy of the underlying judicial process. [*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997)]. As when they apply criminal plain-error review, reviewing courts applying civil plain-error review "must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice." *Id.* at 121.

{¶90} Second, the result of the above exchange is painfully clear: appellants' counsel stipulated to Rojas's injuries amounting to "permanent and substantial physical deformities." Therefore, to the extent that appellants argue that the stipulation was never "accepted" by appellants' counsel, we disagree.

{¶91} In particular, when asked by the trial court whether Rojas's injuries amounted to "permanent and substantial physical deformities," appellants' counsel stated that the injuries "certainly do for [Rojas]." And thereafter appellants' counsel stated that the injuries "don't [amount to a "permanent and substantial physical deformity"] for [Torres]." (Tr. 1403.) Further, with regards to Torres's injuries, appellants' counsel further stated that "I would agree it is a physical deformity, but I would disagree that it is substantial." (Tr. 1405.)

{¶92} Moreover, to the extent that appellants argue that the trial court disrupted their statements, we note that the trial court gave all parties ample opportunity to express their concerns regarding the stipulations. Indeed, the trial court gave all parties, especially appellants'

counsel, an opportunity to withdraw from the stipulation. Therefore, in our review of the record, we can only conclude that appellants' counsel chose to stipulate to Rojas's injuries.

**{¶93}** Accordingly, appellants' fifth assignment of error is overruled.

### D. Damages Capped at $350,000

**{¶94}** In their sixth assignment of error, appellants argue that the trial court lacked jurisdiction to award Rojas and Torres noneconomic damages greater than $350,000.

**{¶95}** Appellants urge us to "mold" the verdict to award both Rojas and Torres $350,000 in damages. Pursuant to R.C. 2315.18(B)(2), if a plaintiff fails to prove a "permanent and substantial physical deformity," damages are capped at $350,000. Appellants contend that because Rojas and Torres did not each prove a "permanent and substantial physical deformity," the trial court lacked jurisdiction to enter judgment on an award above the statutory limit.

**{¶96}** We note that the trial court did not include an interrogatory requiring the jury to make a specific finding as to whether Rojas's injuries were a "permanent and substantial physical deformity." However, as we noted in our above analysis, the parties stipulated that Rojas had a "permanent and substantial physical deformity." Therefore, appellants have waived any error as it relates to not including the interrogatory as to Rojas's injuries.

**{¶97}** To the extent that appellants argue that Torres's award should have been limited to $350,000, we note the following interrogatory: "do the injuries and losses of Kiara Torres amount to a permanent and substantial physical deformity?" to which all members of the jury panel responded "yes." Thus, appellants' argument to the contrary is wholly without merit.

**{¶98}** Accordingly, appellants' sixth assignment of error is overruled.

### E. Prejudgment Interest

**{¶99}** In its seventh, eighth, and ninth assignments of error, Westfield argues that the trial court erred in its award of prejudgment interest to Rojas and Torres.

### 1. Good Faith Efforts

**{¶100}** In its ninth assignment of error, Westfield specifically argues that the trial court erred in finding Westfield had not made good faith efforts to settle the case.

**{¶101}** R.C. 1343.03(C) controls awards of prejudgment interest and provides, in relevant part:

> (1) If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows[.]

**{¶102}** Furthermore, R.C. 1343.03(C) "requires that the trial court determine the issue of prejudgment interest 'at a hearing held subsequent to the verdict or decision in the action.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 33, 734 N.E.2d 782 (2000), quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658, 635 N.E.2d 331 (1994). The trial court must find that the party required to pay the judgment failed to make a good faith effort to settle and that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. *Moskovitz* at *id.*

**{¶103}** The party seeking an award of prejudgment interest bears the burden of proof. *Damario v. Shimmel*, 8th Dist. Cuyahoga Nos. 90760 and 90875, 2008-Ohio-5582, ¶ 54.

> In determining whether to award a motion for prejudgment interest, the trial court must consider whether the nonmoving party: "(1) fully cooperated in discovery proceedings, (2) rationally evaluated its risks and potential liability, (3) did not

unnecessarily delay the proceedings, and (4) made a good faith settlement offer or responded in good faith to an offer from the other party."

*Link v. FirstEnergy Corp.*, 2014-Ohio-5432, 25 N.E.3d 1095, ¶ 60 (8th Dist.), quoting *Damario* at ¶ 53, citing *Kalain v. Smith*, 25 Ohio St.3d 157, 159, 495 N.E.2d 572 (1986).

{¶104} Furthermore, if a party has a good faith, objectively reasonable belief that they have no liability, they need not make a monetary settlement offer. *Kalain* at 159. Whether a party's settlement efforts are made in good faith is a determination within the sound discretion of the trial court. *Id.*, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). As such, we review the trial court's determination for an abuse of discretion.

{¶105} Westfield argues that it had a good faith, objectively reasonable belief that they had no liability in the instant matter, and, as such, it was not required to make a monetary settlement offer. Westfield's belief was predicated upon its own independent investigation and evaluation.

{¶106} On the day of the accident, Westfield assigned an investigator to examine the claims arising from the accident. In particular, Westfield found that the police report generated by the Cleveland Police Department as a result of the accident was favorable. In the police report, investigating officers noted that Martinez was traveling well in excess of the posted 35 mph speed limit. Investigating officers also noted that the result of the accident was Martinez's "inattention" and noted that English was a noncontributing factor in the accident. Martinez was ultimately charged with two counts of aggravated vehicular assault, and pled guilty to an amended count of negligent assault.

{¶107} Westfield also relied upon an accident reconstructionist's report. This report concluded that Martinez was driving 62 mph and caused the accident by rear-ending English's truck.

{¶108} In addition, Westfield obtained a favorable arbitration decision that found Martinez to be 100 percent liable. English's truck had sustained damage as a result of the accident and English submitted a collision claim to Westfield for the damage. Thereafter, Westfield sent Martinez's insurance company a subrogation demand. Martinez's insurance company denied liability and Westfield filed for arbitration. As a result, the arbitration decision found Martinez to be 100 percent liable, and found in favor of Westfield.

{¶109} Once their evaluation was completed, Westfield then met with its defense counsel. Westfield's investigative team and defense counsel jointly assessed the accident. These parties subsequently agreed that Westfield had no liability in the accident.

{¶110} In our review of the record, we find that Westfield had a good faith, objectively reasonable belief that it had no liability. To this end, Westfield was not required to make a monetary settlement offer. *Link*, 2014-Ohio-5432, 25 N.E.3d 1095, at ¶ 62. *See also Baker v. Cleveland*, 8th Dist. Cuyahoga No. 93952, 2010-Ohio-5588, ¶ 59.

{¶111} Although we find that Westfield was not required to make a monetary settlement offer, we note that Westfield did in fact make such an offer. On March 25, 2014, the parties conducted a settlement conference where Westfield had offered Rojas a settlement of $100,000 and offered Torres a settlement of $25,000. This offer was rejected by both Rojas and Torres. Further, Westfield made a "high-low" settlement offer of $125,000 to $2,000,000, which was rejected by Rojas and Torres.

{¶112} In addition, Rojas and Torres made settlement offers that were rejected by Westfield. One week before trial, Rojas and Torres made an offer for policy limits. The policy limit totaled $2,000,000. This offer was rejected by Westfield. Also, throughout the proceedings, Rojas and Torres made demands "within" policy limits that were rejected by

Westfield. Furthermore, during trial, Rojas and Torres made a joint offer of a combined $1,900,000 which was also rejected by Westfield.

{¶113} Based on these facts, we find that the trial court abused its discretion in finding that Westfield did not make good faith efforts to settle the case. In making this finding, we are cognizant that the trial court was actively involved throughout the entirety of these proceedings, including settlement negotiations and pretrial hearings, and, therefore, "was in the best position to evaluate whether good faith was exercised by both parties in settling this case." *Jontony v. Colegrove*, 2012-Ohio-5846, 984 N.E.2d 368, ¶ 67 (8th Dist.). Nevertheless, we find that Westfield's belief that it had no liability is supported by competent, credible evidence. As such, we vacate the trial court's award of prejudgment interest to Rojas and Torres.

{¶114} Accordingly, Westfield's ninth assignment of error is sustained.

{¶115} Pursuant to R.C. 1343.03(C)(1), once it has been established that "the party required to pay" the award of prejudgment interest did not fail to make a good faith effort to settle the case, we conclude that the trial court abused its discretion in its award of prejudgment interest. *Moskovitz,* 69 Ohio St.3d at 658, 635 N.E.2d 331. As such, Westfield's seventh and eighth assignments of error are moot.

### III. Conclusion

{¶116} Based on the foregoing analysis, we cannot say that the trial court abused its discretion in denying appellants' motion for a new trial. Nor can we say the trial court erred in denying appellants' post-judgment motion pursuant to R.C. 2315.19. The awards of damages were not excessive given the severity of the injuries to both Rojas and Torres. Moreover, there existed sufficient evidence for the jury to determine that Torres's injuries amounted to a "permanent and substantial physical deformity," the parties clearly stipulated that Rojas's injuries

amounted to a "permanent and substantial physical deformity," and Torres's and Rojas's damages awards were not capped at $350,000. Lastly, the trial court abused its discretion in finding that Westfield did not make good faith efforts to settle the case, and erred in awarding prejudgment interest.

{¶117} Judgment affirmed in part, and vacated in part.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN PART, CONCURS IN JUDGMENT ONLY IN PART AND DISSENTS IN PART WITH SEPARATE OPINION


SEAN C. GALLAGHER, P.J., CONCURRING IN PART, CONCURRING IN JUDGMENT ONLY IN PART AND DISSENTING IN PART:

{¶118} I respectfully concur in judgment only with the majority opinion in paragraphs 1-60. I do not believe it was proper for plaintiffs' counsel to argue that defense counsel was misstating the law on liability. Defense counsel had every right to present a theory of the case, and the defense's theory — that liability is an either/or proposition based on the facts of the case, in that either Martinez or English was responsible for the accident — is not a misstatement of the law. In fact, the jury agreed that it was an all-or-nothing proposition. The defense had a firm

basis for advancing such a theory. Martinez was indicted on two counts of aggravated vehicular assault and pled guilty to a reduced charge of negligent assault for his conduct in causing the collision. English was not cited or charged by police. Nevertheless, because the trial court gave a cautionary instruction on counsel's comments that the jury is presumed to have followed, I concur in judgment only with the majority's outcome on the first two assigned errors.

{¶119} On the third assigned error, I respectfully dissent. Torres was awarded $1.8 million for economic damages stemming from her lost earning capacity and past medical expenses. Torres provided no other basis to support the economic damages sought. Although the majority concludes that other economic damages could have been considered by the jury, the jury was not provided any other measure of damages or any other method of calculating economic damages. Tort recovery may not be had for damages that are speculative, and thus we must limit the review to the damages actually sought.

{¶120} Torres asked the jury to consider her $168,000 of past medical expenses as economic damages (Tr. 1523:9-16) but failed to present evidence of lost earning capacity sufficient to justify the remaining portion of the damages award. Torres also argued in closing that the jury could assume a minimum wage income in the absence of expert evidence demonstrating her vocational opportunities and lost earning capacity. Tr. 1524:1-7. Even if that was an appropriate method of seeking lost earnings or wages, the jury was not provided any means to calculate the present value of the lost earnings over Torres's lifetime. The only economic damages demonstrated through the record were her medical expenses. I am constrained by my prior position from *MADFAN, Inc. v. Makris*, 2017-Ohio-979, 86 N.E.3d 707, ¶ 8 (8th Dist.), which I believe is controlling on this issue.

{¶121} I also cannot conclude from the record that the parties stipulated that Rojas incurred a substantial and permanent physical deformity for the purposes of the noneconomic damages cap under R.C. 2315.18(B)(3)(a). Neither Torres nor Rojas filed a responsive briefing to address this issue. App.R. 16(A)(7).[8] As the majority notes, defense counsel specifically stated that she was not on record to a stipulation, but she conceded there was sufficient evidence to put the issue to the jury for consideration.[9] After that discussion, Rojas asked the trial court to include a jury interrogatory as it related to Rojas. The trial court denied Rojas's request without explanation. Rojas's counsel attempted to clarify by stating that there is no question that Rojas has a "substantial physical deformity," to which the court stated "that is correct." That is not a stipulation, but instead is the court taking judicial notice of what is actually a triable issue of fact. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 40 (courts must apply the statutory law to the facts as found by the jury; they cannot alter the finding of facts themselves). The issue should have been presented to the jury for consideration as it was for Torres.

{¶122} Importantly, the defense has no burden to object to the failure to submit a jury interrogatory that determines whether the limitation to noneconomic damages applies. It is the plaintiffs' burden to demonstrate that the limitations set forth under R.C. 2315.18(B) do not apply. If anything, Rojas should have renewed his objection to the trial court's failure to provide the requested interrogatory as it pertained to his case.

---

[8] Neither Rojas or Torres included a responsive argument to the third, fourth, or fifth assignments of error. App.R. 16(A)(7). Their joint brief appears to address issues and assigned errors not raised in this appeal.

[9] Tr. 1406:3-7. "I'm not on the record stipulating that he [Rojas] has a substantial and permanent physical deformity. I'm just saying it is a question for the jury * * *."

{¶123} I fully concur with the majority's resolution of the seventh, eighth, and ninth assignments of error.

{¶124} For the foregoing reasons, I cannot fully join the majority's decision and respectfully dissent in part.   I would remand for a new trial on damages.